C. William LANGE; Catherine L. Lange, Appellants,

v.

James E. HOCKER; Phyllis E. Hocker; James J. Mullally, Jr.; Ann E. Mullally; Oakhampton Downs Limited, Appellees.

No. 90–2257.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1991.

Decided Aug. 1, 1991.

Rehearing and Rehearing En Banc Denied Sept. 9, 1991.

5. The Hon. David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

**360**

Thomas Utterback, St. Louis, Mo., for appellants. William Hellmich, St. Louis, Mo., on the brief.

Thomas Walsh, St. Louis, Mo., for appellees. Joseph Colagiovanni and Douglas King, St. Louis, Mo., on the brief.

Before BOWMAN, Circuit Judge, ROSS, Senior Circuit Judge, and HANSON,* District Judge.

BOWMAN, Circuit Judge.

We are confronted with yet another RICO case asking us to divine what constitutes a pattern of racketeering activity. The efflorescence of RICO's judicial inter-

pretation has not been an uncomplicated progression; indeed, the flowering of the statute's legacy is akin to jungle underbrush run amok. With machete in hand, we attempt to clear a path to reach the case now before us. Having hacked our way through the tangle, we affirm the order of the District Court[1] granting the defendants' motion to dismiss the complaint.

Construing the allegations in the light most favorable to the plaintiffs, we review their complaint. William and Catherine Lange ("plaintiffs") and James and Phyllis Hocker and James and Ann Mullally ("defendants") were shareholders of Oakhampton Downs, Limited ("Oakhampton"), a closely-held Missouri corporation engaged in equestrian training and equine research.[2] Formed in late 1986, Oakhampton began operations in April 1988 and by August was losing money. In response, a series of directors' and shareholders' meetings were held in late August and early September. As a result of these meetings defendants took control of Oakhampton by means of an illegal stock transaction (effected on September 21, 1988) that gave them a majority interest in the corporation.[3] Defendants then "embarked upon a course of mismanagement of Oakhampton [D]owns, including numerous ultra vires acts, which ultimately drove the corporation to the brink of bankruptcy." Appellants' Brief at vi. Defendants later sought to "legitimate" their control of the corporation by amending Oakhampton's Articles of Incorporation to cure the legal deficiencies in the September 21, 1988 transaction. When this attempt failed in July 1989, defendants resigned as officers and directors of Oakhampton. After resigning, and after this

---

\* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

2. According to the complaint, as of August 1988 plaintiffs owned 1600 of the 4530 shares outstanding; defendants owned 400 shares. Appellants' Appendix at 89. As of August 1988, William Lange, James Hocker and James Mullally

comprised three of the five members of the Oakhampton board of directors. *Id.*

3. On September 21, 1988 the shareholders approved a resolution increasing the capital stock in Oakhampton by 5,400 shares and selling these additional shares to defendants, thereby giving them majority control of Oakhampton. Plaintiffs contend this transaction was illegal because it was not approved by the required percentage of shareholders. *See infra* note 5.

lawsuit was filed in August 1989, defendants "induced key employees to resign and most of the company's customers to remove their horses [from Oakhampton's stable]." *Id.* at vi-vii.

Plaintiffs contend that these activities and the alleged acts of mail and wire fraud needed to carry them out suffice to state a RICO claim. The District Court dismissed plaintiffs' claims,[4] holding that the complaint did not allege sufficiently a "pattern of racketeering activity" as required by 18 U.S.C. § 1962 (1988).

Plaintiffs argue that defendants violated 18 U.S.C. §§ 1962(b), (c), and (d) (1988), which prohibit acquiring, maintaining, or conspiring to acquire or maintain, an interest in an enterprise "through a pattern of racketeering activity," which is defined as follows:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5) (1988). This definition has been the source of much frustration as courts endeavor to determine what constitutes a pattern of racketeering activity.

In *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court attempted to shed some light on Section 1961(5). In stating what must exist in order to find a pattern, the Court settled on the "'factor of *continuity plus relationship* which combines to produce a pattern.'" *H.J.*, 492 U.S. at 239, 109 S.Ct. at 2900 (quoting 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan) (quoting S.Rep. No. 91–617, 91st Cong., 1st Sess.

158 (1969))) (emphasis in *H.J.*). "[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original).

Continuity can be shown in one of two ways—closed-ended continuity or open-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. Where continuity cannot be established in such a manner, a RICO violation may be shown when a "*threat* of continuity is demonstrated." *Id.* (emphasis in original). Here, plaintiffs have failed to allege facts sufficient to establish continuity under either approach.

Plaintiffs contend that defendants committed various acts of mail and wire fraud to help acquire control of Oakhampton, and that the transaction used to gain control was illegal under Missouri law.[5] But even assuming that these allegations are true, they do not meet the closed-ended continuity requirement. Read in the light most favorable to plaintiffs, the complaint alleges that a number of predicate acts (namely, wire and mail fraud and the illegal corporate transaction[6]) were committed between August 25, 1988 and September 21, 1988. Acts committed in such a short time span do not constitute a pattern of racketeering activity. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement...." *Id.*

Plaintiffs attempt to extend the time frame of alleged racketeering activity by including acts of mismanagement that

---

4. The dismissal included plaintiffs' pendent state-law claims as well as their RICO claim.

5. Plaintiffs allege that the transaction giving defendants controlling interest in Oakhampton was approved by only 64.7% of the shareholders, while the applicable Missouri law requires two-thirds (66.67%) approval for the transaction to be valid.

6. It is highly doubtful that the alleged illegal corporate transaction is a racketeering activity pursuant to 18 U.S.C. § 1961 (1988), as it seems clear that the alleged legal deficiencies in the transaction would give rise only to civil liability at most, and the transaction neither amounts to nor threatens criminal activity. However, even if this transaction could be viewed as a predicate act, the pattern requirement is not satisfied in this case.

occurred in 1988 and 1989. At most, however, these alleged acts of mismanagement show managerial incompetency, which is not a crime, let alone a predicate act under 18 U.S.C. § 1961(1) (1988) (enumerating a list of criminal activities that is to be considered racketeering activity). Plaintiffs also try to show closed-ended continuity by pointing to events surrounding the July 1989 shareholder meetings that were called for the purpose, inter alia, of ratifying the September 1988 transaction that gave control of Oakhampton to defendants. This is of no avail to plaintiffs. Under Section 1961(1), attempting to ratify a disputed transaction is not a predicate act.[7]

■ Further attempts to extend the time frame of defendants' alleged racketeering activity are equally specious. Resignation from a corporate office or directorship is not a predicate act; neither is refusal to surrender disputed stock ownership. Plaintiffs contend that after this lawsuit initially was filed, defendants, through acts of mail and wire fraud, drove Oakhampton's clients away and caused key employees to resign. These allegations of fraud, however, are too vague to be the basis for a RICO claim. Plaintiffs' amended complaint states that "[u]pon information and belief, [defendants] executed their scheme by contacting the various horse owners through the use of the interstate mail and/or telephone systems." Appellants' Appendix at 54. "In pleading RICO violations, a litigant must allege the time, place, and content of all false representations." *Lally v. Crawford County Trust & Sav. Bank*, 863 F.2d 612, 613 (8th Cir.1988) (per curiam). Here that requirement has not been met. Because of the vague and conclusory nature of these particular allegations, they do not assist plaintiffs in establishing a pattern of racketeering activity.

Plaintiffs' attempt to frame this case in terms of a threat of continued racketeering activity also fails. Plaintiffs have conceded that defendants currently play no management role in Oakhampton. They also have conceded at oral argument that judicial foreclosure has been had on Oakhampton's physical facilities. Defendants' refusal to relinquish their disputed ownership stake in Oakhampton cannot be treated as a threat of continued racketeering activity. Nor is a denial of civil RICO liability tantamount to a "threat of continuity." *H.J.*, 492 U.S. at 242, 109 S.Ct. at 2902 (emphasis deleted). The heart of plaintiffs' complaint is the allegedly illegal takeover of a controlling interest of Oakhampton. The complained-of transaction and the attempt to ratify it are complete. There is no ongoing threat comparable to the extortion example noted by the Supreme Court in *H.J.*, *id.* (a hoodlum selling "insurance" to neighbors to protect them against broken windows and telling them that he would reappear to collect a "premium" every month is a prime example of a threat of continued racketeering activity).

In short, what we have here is a dispute among the owners of a failed business venture, with plaintiffs attempting to recoup their losses by assigning to defendants actionable blame for the venture's demise. Although plaintiffs may have stated claims upon which relief could be granted under state law (we need not and do not express any opinion in that regard), they have not stated a RICO claim.

To sum up, we hold that plaintiffs have failed to allege facts sufficient to establish a pattern of racketeering activity as required by Section 1961. Plaintiffs' RICO count therefore failed to state a claim on which relief could be granted. Having dismissed the RICO claim, the District Court correctly dismissed plaintiffs' pendent state-law claims. Accordingly, the order of the District Court dismissing the complaint is affirmed.

---

7. Plaintiffs contend that defendants committed mail fraud by sending a misleading notice of the issues to be discussed at the July 19, 1989 shareholders meeting. Even if this allegation had been pleaded, which it apparently was not, it is ill-founded. As plaintiffs themselves note, the complained-of item of business, the proposed ratification of the September 21, 1988 transaction, was not acted upon on July 19; it was tabled until July 26 when it was acted upon (and in fact was defeated) at a meeting called for that purpose.