[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-10925

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 9, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00688-CV-T-23-EAJ

PAMELA PERERA, as Personal Representative of the
Estate of Mitchell Kenneth Perera deceased, and
as assignee of Estes Express Lines Corporation,

Plaintiff-Appellant,

versus

UNITED STATES FIDELITY AND
GUARANTY COMPANY, a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 9, 2008)**

Before ANDERSON and MARCUS, Circuit Judges, and ALTONAGA,* District
Judge.

_____

* Honorable Cecilia M. Altonaga, United States District Judge for the Southern District of
Florida, sitting by designation.

ANDERSON, Circuit Judge:

In our previous decision in this case, this panel determined that a potentially controlling issue in the case was whether an insured or its assignee can maintain a bad faith cause of action against an insurer when the insurer's actions never resulted in increased exposure on the part of the insured to excess liability or an excess judgment. Recognizing that issue as one of Florida law, and in light of the lack of clarity in the Florida cases, we concluded that appropriate resolution of the legal issue would likely call for certification to the Florida Supreme Court. However, we expressed reluctance to certify unless it was clear that the certified issue would control the case. We realized that a threshold factual issue held the potential to moot the legal issue, and we recognized that we should certify only pure legal issues. Therefore, our prior opinion reserved the legal issue we proposed to certify, and we remanded to the district court with directions to resolve an alternative issue – i.e., the factual issue of whether the insurer's conduct otherwise amounted to bad faith. Had resolution of that factual issue resulted in a finding of no bad faith, the above legal issue would have been rendered moot.

However, this case has returned to this Court after the limited remand in which a jury determined that the conduct of appellee United States Fidelity and Guaranty Company ("USF&G") in the underlying dispute did rise to the level of

2

bad faith. Having resolved any factual issues in the case, we are left with controlling issues of Florida law which are appropriate to certify to the Florida Supreme Court – whether a cause of action for bad faith against an insurer can be maintained when there is not an excess judgment against the insured, and whether, even if an excess judgment is not always required, a cause of action for bad faith against an insurer can be maintained when the insurer's actions never resulted in the insured's increased exposure to liability in excess of the policy limits of the insured's policies. Because it is unclear under Florida law whether a plaintiff can maintain a cause of action for bad faith against an insurer when, as here, the insurer's actions never resulted in increased exposure on the part of the insured to excess liability, or an excess judgment, we certify the questions set out below to the Florida Supreme Court. "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005).

## I. FACTS AND PROCEDURAL HISTORY

This case stems from a tragic workplace incident at Estes Express Lines Corporation ("Estes"), in which Estes employee Mitchell Perera was crushed to

3

death by a piece of equipment. As the personal representative of his estate, Mitchell Perera's wife, appellant Pamela Perera ("Perera"), filed a wrongful death suit against Estes and certain Estes employees. Estes maintained three liability insurance policies: a workers' compensation/employer liability policy (insuring only Estes) issued by USF&G with a limit of $1 million after Estes' self-insured retention of $350,000; a commercial liability policy (insuring only employees of Estes) issued by Cigna Property and Casualty Insurance Company with a limit of $1 million and a $500,000 deductible; and an excess liability policy issued by the Chubb Group of Insurance Companies with limits of $25 million. All three policies required Estes to provide its own defense, thus imposing on the several insurance companies no duty to defend.

After learning of Perera's lawsuit, USF&G issued a reservation of rights letter, believing that the intentional acts exclusion contained in the USF&G policy precluded coverage of Perera's claim against Estes. In March 2001, Perera, Estes, and the three insurance companies met to mediate the case. Cigna tendered its policy limits in order to effect a settlement of the claim against the employees. When USF&G insisted on its coverage defense and refused to tender an amount deemed reasonable by the other parties, they asked USF&G to leave the mediation.

Some months later, Perera, Estes, Chubb and Cigna reached a settlement of

Perera's claims. The parties agreed to a settlement of $10 million, which was divided as follows: $500,000 from Cigna (representing the policy limits of $1 million minus Estes' $500,000 deductible), $750,000 from Estes, and $3.75 million from Chubb. The remaining $5 million was to come from a bad faith lawsuit against USF&G which Estes agreed to bring itself or assign to Perera. Perera executed a release of any further claims against Chubb and agreed to accept the proceeds of the lawsuit against USF&G as a complete satisfaction of her judgment, even if the suit did not result in any additional proceeds. The provision requiring Perera to accept the proceeds of the USF&G suit as full satisfaction of her judgment also served to protect Estes and the employees from any additional liability to Perera. However, neither Estes nor its employees released Chubb from further liability.

Perera brought suit as Estes' assignee against USF&G for breach of contract and bad faith. The district court granted summary judgment to Perera on the coverage obligation, which required USF&G to pay its policy limit of $1 million. USF&G has not challenged that ruling on appeal. The district court granted summary judgment to USF&G on the bad faith claim, holding that without an excess judgment against the insured, there can be no cause of action for bad faith. Perera appealed that decision to this Court.

After the remand to the district court noted above, and having eliminated alternative resolutions of this case and resolved any factual issues, we now turn to the two issues of Florida law which we propose to certify.[1]

---

[1] As a threshold matter, we find that the magistrate judge did not err in denying USF&G's motions for judgment as a matter of law and for a new trial. After the jury returned its verdict, USF&G filed a renewed motion for judgment as a matter of law and a motion for a new trial. The magistrate judge denied both of these motions. After careful review of the post-remand letter briefs of the parties, and of the relevant parts of the record on remand, we hold that the magistrate judge did not err in denying USF&G's post-trial motions.

This Court reviews the denial of a motion for judgment as a matter of law de novo, and "will reverse only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Action Marine, Inc. v. Cont'l Carbon, Inc., 481 F.3d 1302, 1309 (11th Cir. 2007) (internal quotation marks omitted). USF&G argues that it is entitled to judgment as a matter of law because the Laforet factors for evaluating bad faith all weigh in favor of USF&G. We disagree. The evidence presented at trial indicated that, while at the time of the coverage dispute there was not a case on point requiring USF&G to provide coverage to Estes, there were a number of Florida cases that imposed a coverage obligation in similar situations. Thus, the weight of authority did not support USF&G's position. Therefore, even if USF&G is correct that the weight of authority factor is a legal question which should have been governed by jury instructions (instead of submitting the issue to the jury), there was no prejudice to USF&G. Additionally, the jury could have found that USF&G's efforts at settlement in the face of the coverage dispute were an indication of bad faith. We hold that, in light of all the evidence, reasonable people could disagree on the verdict, making judgment as a matter of law for USF&G inappropriate.

We also reject USF&G's argument that judgment as a matter of law was warranted because the settlement agreement does not apportion liability among Estes and the employees, but rather makes them jointly and severally liable. USF&G has not identified a Florida case in which an insurer was permitted to pay only a portion of the entire judgment against tortfeasors who were jointly and severally liable. Rather, as Florida law makes clear, the appropriate remedy when one joint tortfeasor has paid more than his or her share is to seek contribution. Fla. Stat. Ann. §768.31(2) (West 2000). Accordingly, USF&G is not entitled to judgment as a matter of law because the settlement agreement failed to apportion liability among joint tortfeasors.

USF&G also filed a motion for a new trial, alleging error in the magistrate's evidentiary decisions. This Court reviews rulings on the admissibility of evidence for an abuse of discretion, and we will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008). We

6

## II. DISCUSSION

A.  Can a Cause of Action for Bad Faith Against an Insurer be Maintained When There is Not an Excess Judgment Against the Insured?

In this case, as the magistrate judge held, there is no excess judgment against the insured, Estes. Viewed as of the time the settlement agreement was negotiated, Estes had $25 million in insurance coverage – $1 million from the Cigna policy; $1 million from the USF&G policy; and $25 million from the Chubb policy, in excess of the other two policies. To constitute an excess judgment, there would have to have been a judgment in excess of $25 million. The judgment agreed upon in settlement – $10 million – is obviously far less than the extant coverage. Estes therefore faces no liability above its existing policy limits.

Under Florida law, an insurer owes a duty of good faith to its insured.

---

cannot conclude that the magistrate judge's evidentiary rulings constitute reversible error. The admission of evidence pertaining to USF&G's decision not to file a declaratory judgment was not reversible error. Even if there was at the time some doubt as to whether a court would entertain such an action, it was clearly in the interest of the insured to whom USF&G owed duties to have the coverage issue resolved promptly, and it is not likely that any of the interested parties would have objected to a declaratory judgment seeking an early resolution of the coverage issue. USF&G's argument regarding admission of the Hicks letter is also misplaced. The magistrate judge did not commit reversible error in refusing to exclude it. Similarly, there was no reversible error in the exclusion of certain testimony of two USF&G witnesses.

Accordingly, we cannot conclude that the magistrate judge committed reversible error in denying USF&G's motions for judgment as a matter of law and for a new trial. Therefore, we accept the jury's verdict that USF&G's failure to promptly resolve the coverage issue, its insistence upon its coverage position, and its failure to contribute more substantially to the settlement fund rose to the level of bad faith.

7

Berges v. Infinity Ins. Co., 896 So. 2d 665, 672 (Fla. 2004). This duty of good faith encompasses the obligation to protect the insured from a judgment above the insured's policy limits. Id. Accordingly, if the insurer fails to consider a reasonable settlement offer, and the insured is subsequently exposed to an excess judgment, the insured may have a claim for bad faith against the insurer. Rosen v. Fla. Ins. Guar. Ass'n, 802 So. 2d 291, 294 (Fla. 2001) (citing Fid. & Cas. Co. v. Cope, 462 So.2d 459, 460 (Fla. 1985)).

However, it is not clear to us that the Florida Supreme Court would hold that an excess judgment is a necessary part of a claim for bad faith. The Court has acknowledged that "the essence of a bad-faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim." Rosen, 802 So. 2d at 294. The Court has also posited, in the context of deciding whether a trial court had jurisdiction over a bad faith claim in the absence of an excess judgment, that "even if a complaint were filed asserting a bad-faith claim against a liability insurance company without alleging the existence of a judgment against the insured in excess of the policy limits, the most that could be said would be that the complaint failed to state a cause of action." Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179, 181-82 (Fla. 1994). In Cope, the Court held that a third party

8

cannot maintain a bad faith action against the insurer when the excess judgment has already been satisfied and no assignment of the claim was executed prior to satisfaction. 462 So. 2d at 461. Similarly, the Court has found that a third party may not sue an insurer under the bad faith insurance statute when the judgment was within the policy limits. State Farm Fire & Cas. Co. v. Zebrowski, 706 So. 2d 275, 277 (Fla. 1997).

Although these cases suggest that Florida law may not recognize a bad faith action without an excess judgment, at least one intermediate court has held that an excess judgment is not an essential part of a bad faith claim. See N. Am. Van Lines v. Lexington Ins., 678 So. 2d 1325, 1333 (Fla. Dist. Ct. App. 1996) ("[T]he bad faith action is essentially one for breach of contract, which includes, under the case law, an implied good faith obligation. No excess judgment is required, because the insured has paid an obligation for which the insurers should have been liable, had they not breached the contract."). In addition, another appellate court has held that an insured's bad faith damages against his insurer are not necessarily limited to the amount of the excess judgment. See Swamy v. Caduceus Self Ins. Fund, Inc., 648 So. 2d 758, 759 (Fla. Dist. Ct. App. 1994).

Given the lack of clarity regarding the necessity of an excess judgment to a bad faith cause of action under Florida law, we seek the guidance of the Florida

Supreme Court. Accordingly, we respectfully certify the following question to the

Florida Supreme Court:

1.    CAN A CAUSE OF ACTION FOR BAD FAITH AGAINST
      AN INSURER BE MAINTAINED WHEN THERE IS NOT AN
      EXCESS JUDGMENT AGAINST THE INSURED?


B.    <u>Even if an Excess Judgment is Not Always Required, Can a Cause of
      Action for Bad Faith Against an Insurer be Maintained When the
      Insurer's Actions Never Resulted in Increased Exposure on the Part of
      the Insured to Liability in Excess of the Policy Limits of the Insured's
      Policies?</u>

In addition to its argument that Perera's bad faith claim is barred in the

instant case because of the absence of an excess judgment, USF&G also makes an

alternative argument.   USF&G argues that, even if an excess judgment is not

required, Perera's bad faith claim is barred because USF&G's insured, Estes, was

never exposed to liability in excess of the limits of liability in its several policies.

As a factual matter, we agree with USF&G that Estes was never exposed to

liability in excess of the limits of its several policies, because any exposure above

USF&G's limits was covered by the Chubb coverage with limits of $25 million.[2]

Perera's only argument challenging the absence of excess exposure on the part of

_____

[2]    We note that Chubb, the excess carrier, has not asserted a bad faith claim against
USF&G, nor assigned any claim it may have to Perera.  Thus, whether or not Chubb might have
had such a claim is not before us.  Moreover, Perera has not argued that she is entitled to assert
any rights of Chubb, by virtue of subrogation or otherwise; accordingly, any such argument is
deemed abandoned.

10

Estes is that Chubb's liability coverage was triggered only after payment of the limits of the two underlying policies. Thus, Perera argues that Estes was required to advance sums, for which it would not otherwise have been liable, in order to persuade Chubb to contribute to the settlement even though the USF&G limit of $1 million had not been paid. For several reasons, we reject Perera's argument. First, even if Estes had come to up with the full $1 million limit, that would impose upon Estes only an exposure to the extent of $1 million, the amount of the USF&G policy itself, and not an amount in excess thereof. Also, the record evidence is clear that, at the relevant times, Chubb was committed to settling the case and was not delaying settlement negotiations with the plaintiff's attorney and was not refusing to make the necessary coverage available to settle the case, awaiting the payment of USF&G's $1 million. On the contrary, Chubb was contributing substantial funding for the offers being made to plaintiff's attorney, as well as the necessary funding for the final settlement.[3]

Perera makes no other argument explaining how the actions of USF&G

---

[3] Moreover, the facts as to the funding of the settlement demonstrate that Estes did not advance the $1 million limit of the USF&G policy. Rather, Estes advanced $500,000 which it was obligated in all events to pay as the deductible under the Cigna policy. In addition, Estes advanced $250,000, which it may or may not have been obligated to pay in any event. Estes had a $350,000 obligation pursuant to its self-insured retention under the USF&G policy. There was a dispute as to how much of that had been eroded (e.g., defense costs allocable to the defense of Estes could erode it).

11

imposed upon Estes any exposure to liability in excess of its policy limits. Having

rejected Perera's sole argument, we conclude that Estes was not exposed to liability

in excess of the limits of its several policies.[4]

---

[4]     Our statement that Perera makes no other such argument requires explanation. In reviewing relevant portions of the record on remand (as part of our review of the magistrate judge's denial of USF&G's motions for judgment as a matter of law and for a new trial on the remanded issue), we were alerted to a potential factual issue which could cast doubt upon whether the actions of USF&G imposed on Estes any exposure to liability in excess of its insurance coverage. This "new" factual issue relates to the fact that none of the three Estes insurance policies provides coverage for punitive damages. Thus, an argument could have been made that USF&G's bad faith conduct delayed the settlement and caused Estes to be exposed to punitive damage liability for which it would not have been liable in the absence of USF&G's bad faith conduct. As noted above, we were alerted to this new potential argument only during our review of the record following the return of the case to us after remand. In other words, neither Perera's initial brief to this panel nor her reply brief, nor even her letter briefs following remand, was sufficiently precise to alert this panel to the argument.

In addition, Perera was questioned intensely at oral argument about how an insured's bad faith claim could be viable when it was obvious to all parties at all times that there was no possibility of any judgment against Estes, or any liability on its part, in excess of the $25 million of insurance coverage. In other words, Perera was pressed at oral argument as to how there could be a viable bad faith claim by the insured when the insured was never exposed to liability in excess of its policy limits. Notwithstanding such intense questioning, Perera never suggested that USF&G's actions may have exposed Estes to liability for punitive damages, which was not covered under any of the policies. In addition, it should have been apparent to Perera from our discussion at oral argument about remanding to the district court that our effort was to resolve any pending factual issues, in order to permit the certification to the Florida Supreme Court of pure legal issues. But Perera failed at oral argument to alert us to this argument.

Of even greater concern, our short opinion remanding the bad faith factual issue to the district court expressly articulated the legal issues to be certified: "The legal issue in this case is whether an insured or its assignee may maintain a bad faith cause of action against an insurer when an insurer's actions never resulted in increased exposure on the part of the insured to excess liability or an excess judgment." It should have been apparent to Perera that she should have immediately alerted us that she wanted to rely upon an additional factual issue which might cast doubt upon the obvious premise of the legal issue we proposed to certify – i.e., that "the insurer's actions never resulted in increased exposure on the part of the insured to excess liability." If Perera intended to rely upon USF&G's having caused such increased exposure, then Perera should certainly have alerted this panel so that the additional factual issue could have been

Thus, the question arises whether, under Florida law, a bad faith claim against an insurer can be maintained when the insurer's actions never resulted in increased exposure on the part of the insured to liability in excess of the policy limits of the insured's policies. USF&G argues that there can be no bad faith claim under such circumstances. USF&G argues that the $4 million allocation in the settlement agreement was merely a "manufactured bad faith claim," bearing no relationship to any actual increased exposure to Estes.

USF&G argues that it is a matter of established Florida law that the very purpose of a bad faith claim is to protect an insured from exposure to a judgment in

_____

resolved on remand along with the bad faith issue. However, Perera failed to move for rehearing, or otherwise alert us.

Had we been more astute, we acknowledge that we could have been alerted from a single sentence at page 31 of Perera's initial brief to the panel, which sentence mentioned that USF&G's insistence on delaying their coverage decision until trial of the underlying case would expose Estes to a potentially large and uninsured punitive damage award. However, that sentence was buried under an unlikely heading relating to miscarriage of justice. And Perera failed to make a straightforward argument – certainly not one under an appropriate heading – that USF&G's actions resulted in Estes being exposed to liability for punitive damages which no insurance would cover. In light of the sparseness and hidden nature of the brief's single sentence, and in light of the numerous above-mentioned failures of Perera to make this argument, we conclude that Perera failed to make the argument with sufficient precision to warrant our entertaining it.

Accordingly, we conclude that the argument is waived, and we determine that the facts for purposes of this appeal are that Estes was never exposed to liability in excess of the limits of its several policies. We find additional comfort in our waiver decision from the fact that our review of the record and the course of the settlement negotiations persuades us that Perera would not in any event have been able to prove that USF&G's bad faith conduct caused any increase in Estees' exposure.

excess of the policy limits on the insured's insurance policies. USF&G argues that the Florida Supreme Court, in <u>Fidelity & Casualty Co. of New York v. Cope</u>, 462 So.2d 459 (Fla. 1985), held:

> The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits) – all of which results in the insured being exposed to an excess judgment.

<u>Id.</u> at 460 (quoting <u>Kelly v. Williams</u>, 411 So.2d 902, 904) (Fla. Dist. Ct. App. 1982). <u>See also</u> <u>Cunningham</u>, 630 So.2d at 181 ("In <u>Cope</u>, we acknowledged that the essence of a third party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim."); 14 Couch on Insurance §206:46 (3rd ed. 2008) ("[A]n insured's right to recover against a liability insurer for failure to exercise good faith is predicated upon the potential damage to the insured and being subjected to a judgment in excess of policy limits, and the consequent subjection of assets to the satisfaction of such judgment.").

Although it is true that <u>Cope</u>, and other Florida cases, say that the essence of a bad faith claim is to protect an insured against exposure to liability in excess of the insured's policy limits, those cases do not seem to be square holdings on the

14

issue that we certify. In light of this lack of clarity, we deem it appropriate to certify the following question to the Florida Supreme Court:

> 2. EVEN IF AN EXCESS JUDGMENT IS NOT ALWAYS REQUIRED, CAN A CAUSE OF ACTION FOR BAD FAITH AGAINST AN INSURER BE MAINTAINED WHEN THE INSURER'S ACTIONS NEVER RESULTED IN INCREASED EXPOSURE ON THE PART OF THE INSURED TO LIABILITY IN EXCESS OF THE POLICY LIMITS OF INSURED'S POLICIES?

Our statement of the two questions to be certified is not meant to limit the scope of inquiry by the Florida Supreme Court. "This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Florida Supreme Court.

QUESTIONS CERTIFIED.[5]

---

[5] USF&G's request for oral argument regarding denial of the motions for judgment as a matter of law and new trial is DENIED.