[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 07-14878

_____

D. C. Docket No. 07-10003-CV-JLK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 09, 2009
THOMAS K. KAHN
CLERK

RICHARD FERRELL,
GRAND LIFESTYLES RESORTS, INC.,

Plaintiffs-Appellants,

versus

LESLIE J. DURBIN,
GARY WILLIAMS,

Defendants,

HAROLD E. WOLFE, JR.,
HAROLD E. WOLFE, JR. REVOCABLE TRUST,
MICHAEL L. BROWNING,
THOMAS J. SIRECI,
WAYNE LARUE SMITH, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 9, 2009)**

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and COHILL,[*] District Judge.

PER CURIAM:

This case arises out of a dispute between former owners of a hotel and resort located in Provincetown, Massachusetts. Richard Ferrell and Grand Lifestyles Resorts, Inc. ("GLR") (collectively "Appellants") filed a complaint against Wolfe, the Wolfe Revocable Trust, Browning, Sireci, Serelis, Botway, Green and Smith (collectively "Appellees") alleging violations of the Federal and Florida RICO statutes and the federal securities laws. The district court dismissed the complaint. Although the district court's judgment relied upon numerous grounds, and although this case might well have been affirmed on the basis of several such grounds, we readily conclude that the judgment of the district court is due to be affirmed upon the grounds set forth below.[1]

## I. BACKGROUND

The complaint contains the following allegations.[2] Appellant Ferrell was an

---

[*] Honorable Maurice B. Cohill, Jr., United States Judge for the Western District of Pennsylvania, sitting by designation.

[1] Accordingly, we decline to address the other grounds upon which the district court dismissed the complaint.

[2] We review the grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004).

investor in The Boatslip, L.L.C. ("The Boatslip" or "Company"), a company that owns and operates a hotel in Provincetown, Massachusetts ("Hotel"). Under the terms of the original Operating Agreement, GLR was The Boatslip's manager. Ferrell owned 25% of GLR and was the Hotel's onsite manager. At its inception, all Appellees, except Smith, owned a beneficial interest in the Company.

Ferrell and appellees Browning and Sireci were also principals in Atlantic Shores Resorts, Ltd. ("Atlantic Shores"). Atlantic Shores owned properties in Key West ("Key West Properties"), including the Atlantic Shores Hotel. In late 2004, a dispute arose between appellant Ferrell and appellees Browning and Sireci over the Key West Properties. At the same time, due to a personal tragedy, Ferrell granted Browning a power of attorney to deal with business matters related to the Key West Properties. Browning used the power of attorney to try and effectuate a sale of the Atlantic Shores Hotel against Ferrell's wishes. As a result of these disputes, Ferrell and Browning reached an agreement to separate their business affairs ("Settlement Agreement I"). Ferrell received Browning's interest in The Boatslip and Browning received Ferrell's interest in Atlantic Shores.

After the settlement, Ferrell learned that Browning had agreed to purchase additional membership units in The Boatslip from owners Durbin and Williams ("Durbin/Williams Units"). Ferrell adamantly objected and the parties came to a

second agreement ("Agreement to Cooperate"). Browning agreed to purchase the Durbin/Williams units and convey them to Ferrell.[3]

Browning then breached the confidentiality provisions of Settlement Agreement I by revealing its terms to the other Defendant-Appellees. As a result, appellees Serelis, Wolfe and Botway, among others, acquired the Durbin/Williams Units from their original owners. However, Browning continued to falsely assure Ferrell of his intention to complete the sale and transfer the Durbin/Williams Units to Ferrell.

Thereafter, appellees Wolfe, Serelis, Botway and Green amended the Boatslip Operating Agreement to remove GLR from its management position. By this time, Ferrell owned all of GLR's stock. Ferrell alleges that the amendments to the management portions of the Operating Agreement could only be made by a unanimous vote. On April 25, 2005 appellees Wolfe, Serelis, Botway and Green, among others, commenced an action in a Monroe County, Florida Circuit Court ("Monroe County Action") to have the amendments declared valid and enforceable. They were represented in that suit by appellee Smith. Appellants asserted a counterclaim alleging that Serelis, Botway and Wolfe tortiously interfered with

---

[3] The Agreement to Cooperate itself only says that _if_ Browning and Sireci acquire the Durbin/Williams Units they will convey them to Ferrell.

4

Browning's agreement to purchase the Durbin/Williams Units and convey them to Ferrell.

During mediation, the parties agreed ("Settlement Agreement II") that Appellants would purchase all the units in the Boatslip for $150,000 per unit. Ferrell placed $220,000 in escrow with the mediator. However, Serelis, Botway, Green and Wolfe refused to honor the agreement. Wolfe, Serelis and Smith alleged that a third party had offered to buy the Boatslip Hotel for $388,888 per unit. They faxed Ferrell a "bogus contract" of sale signed by the purported purchaser.

Ferrell and GLR sought to enforce Settlement Agreement II in the Monroe County court. On September 13, 2005, the parties reached a third settlement agreement ("Settlement Agreement III"). Ferrell and GLR agreed to purchase the Boatslip units for $135,000 per unit plus payment of a certain amount of the Company's tax liabilities allocable to Appellees. Ferrell placed a non-refundable deposit of $550,000 in escrow with appellee Smith. However, Ferrell was never able to complete the purchase of The Boatslip because he was unable to get the necessary financing. He attempted to take out a second mortgage on the Hotel. However, the first mortgage required the mortgagees' consent to subordinate financing. They refused to do so. Ferrell alleges that "one or more Defendants" communicated with the mortgagees and encouraged them not to consent to the

subordinate financing. Ferrell never recovered the non-refundable deposit he paid into escrow. Thereafter, Defendant Smith attempted to loan the $550,000 held in escrow to the Boatslip at an 18% interest rate.[4]

All parties agree that on January 13, 2006 the Monroe County court entered an Agreed Final Order finding that the amendments to the Operating Agreement were valid and dismissing Appellants counterclaims for tortious interference with prejudice. On March 9, 2006, the court entered a second agreed order stating that GLR resigned as manager of The Boatslip. These orders were entered after the parties reached Settlement Agreement III.

On January 16, 2007, Ferrell and GLR filed the instant complaint in Florida district court. They appeal the dismissal, with prejudice, of that complaint.

## II. DISCUSSION

First, we discuss whether Appellants stated a RICO claim. Then, we address whether Appellants have abandoned their securities claims in their brief to this Court. Finally, in an alternative holding, we examine the adequacy of the securities claims under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA").

---

[4] Smith strongly denies these allegations. He claims to have simply made a distribution of the non-refundable deposit, which Ferrell forfeited when he could not obtain the necessary financing to complete the purchase of The Boatslip.

A.  The RICO Claims: Appellants Failed to Allege a "Pattern of Racketeering Activity"

With respect to the federal and state RICO claims, we conclude that Appellants' complaint failed to state a claim upon which relief can be granted.[5] Although Appellants very likely failed to allege facts sufficient to satisfy several of the necessary elements, we focus in particular on the continuity requirement.  With respect to that requirement, it is clear that Appellants' allegations are insufficient.

An essential element of any RICO claim is a "pattern of racketeering activity."  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1264 (11th Cir. 2004).  In 1989, the Supreme Court fleshed out the pattern requirement, holding that the racketeering predicates must "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240, 109 S. Ct. 2893, 2901, 106 L. Ed. 2d 195; see also Jackson, 372 F.3d at 1265.  There are two types of continuity: "closed-ended" and "open-ended."  H.J. Inc., 492 U.S. at 241, 109 S. Ct. at 2902; Jackson, 372 F.3d at 1265.  We will address each in turn.

Closed-ended continuity can be established by "proving a series of related

---

[5]      All parties agree that the Florida RICO statute is patterned after the Federal RICO statute and Florida RICO cases follow Federal RICO cases.  Thus, the analysis of the Federal RICO claims is equally applicable to the Florida RICO claims.  See Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1263-64 (11th Cir. 2004).

predicates extending over a substantial period of time." Jackson, 372 F.3d at 1265 (quoting H.J. Inc., 492 U.S. at 242, 109 S. Ct. at 2902). In this Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." Id. at 1266. Furthermore, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." Id. at 1267. Being abundantly generous to Appellants, the series of alleged misrepresentations took place from late-2004 to mid-2006. Given the scant allegations, the limited time frame, the single scheme and the existence of only two victims, we conclude that the complaint did not sufficiently allege closed-ended continuity.[6]

---

[6] This conclusion is amply supported by persuasive authority from other circuits. For example, in Efron v. Embassy Suites, the plaintiff alleged that his partners in a hotel project intentionally caused the business to lose money in order to force the plaintiff to sell his interest so that defendants could own and control the entire hotel. 223 F.3d 12, 13-14, 18 (1st Cir. 2000). The court accepted the allegation that seventeen predicate acts occurred over a period of twenty-one months. Id. at 17. Nonetheless, the court held that, "the finite nature of the racketeering activities alleged here, together with their occurrence over a relatively modest period of time, cannot in our view, support a jury finding of a RICO pattern under the 'closed' continuity approach." Id. at 19.

In Al-Abood v. El-Shamari, the defendant carried out three different schemes over a period of several years to defraud the plaintiff, a close family friend, of significant sums of money. 217 F.3d 225, 238 (4th Cir. 2000). At trial, the plaintiff prevailed on claims of fraud, breach of fiduciary duty and conversion. Id. at 229. However, the Fourth Circuit affirmed the district court's grant of summary judgment in favor of defendant on plaintiff's RICO claims. The court held that "the narrow focus of the scheme here – essentially a dispute between formerly close family friends – combined with the commonplace predicate acts persuades us that the facts

Open-ended continuity can be established by showing that the misrepresentations were part of the "regular way of doing business" or threaten repetition in the future. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1265 (11th Cir. 2004). These acts did not take place in the regular course of business. They involved the extraordinary act of transferring ownership interests in The Boatslip. Furthermore, it is clear that single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity.[7] See Aldridge v. Lily-Tulip, Inc., 953 F.2d 587, 593-94 (11th Cir. 1992)

here do not satisfy the [RICO] pattern requirement." Id. at 238.

In Edmondson & Gallagher v. Alban Towers Tenants Assoc., the plaintiffs alleged RICO violations arising from a failed attempt to purchase the Alban Towers apartment building. 48 F.3d 1260, 1262 (D.C. Cir. 1995). Given that there was a single scheme, a single injury and only a few victims, the D.C. Circuit held that it was "virtually impossible" for the plaintiffs to establish closed-ended continuity. Id. at 1265. The court expressly found that alleging fifteen predicate acts over a period of three years was insufficient to overcome these other factors. Id.

[7] See, e.g., First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 180-81 (2d Cir. 2004) (concluding that alleged bankruptcy fraud was "inherently terminable" because a scheme to fraudulently convey the debtors assets was essentially complete when the debtor filed for bankruptcy and, thus, did not suggest a threat of continued racketeering activity); GE Inv. Private Placement Partners v. Parker, 247 F.3d 543, 549 (4th Cir. 2001) ("Where the fraudulent conduct is part of the sale of a single enterprise, the fraud has a built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity.") Efron v. Embassy Suites, 223 F.3d 12, 19-21 (1st Cir. 2000) (concluding that a scheme to squeeze appellant and two co-partners out of a business partnership early in its existence so that the remaining partners could reap greater profits had a limited life expectancy "almost by definition" and, consequently, could not satisfy the element of open-ended continuity); Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 782 (7th Cir. 1994) ("In assessing whether a threat of continued racketeering activity exists, we have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity."); Thompson v. Paasche, 950 F.2d 306,

9

(concluding that a scheme to deprive employees of their vacation benefits for the year 1982 did not pose a threat of repetition despite the fact that the defendant company allegedly continued to take steps to conceal their wrongdoing). Appellants' complaint attempts to characterize the scheme as ongoing by alleging that Appellees engaged in a pattern of racketeering activity to acquire and <u>maintain</u> control of The Boatslip. However, it is clear that the predicate acts form the basis of a single scheme to drive Ferrell and GLR from the management of the Company. According to the complaint, that scheme has been accomplished. Appellants alleged that some appellees are still acquiring ownership interests in the enterprise from non-party investors via fraudulent use of the wires and mails and through money laundering activities. However, this allegation lacks any factual support. Accordingly, the district court did not err in finding that Appellants failed to satisfy the requirements for pleading a RICO claim because they did not to adequately

---

311 (6th Cir. 1991) (concluding that a fraudulent scheme to sell nineteen plots of land was "an inherently short-term affair" that was, "by its very nature, insufficiently protracted to qualify as a RICO violation"); <u>Lange v. Hocker</u>, 940 F.2d 359, 362 (8th Cir. 1991) (holding that the allegedly illegal takeover of a controlling interest in a corporation and the attempt to ratify it was complete and posed no on-going threat of racketeering activity sufficient to establish a RICO pattern); <u>Banks v. Wolk</u>, 918 F.2d 418, 423 (3d Cir. 1990) (holding that a single episode of real estate fraud could not establish open-ended continuity without a factor indicating that the actions of the defendants would threaten future harm to others); <u>Phelps v. Wichita Eagle-Beacon</u>, 886 F.2d 1262, 1273-74 (10th Cir. 1989) ("[T]here is no open-ended ongoing pattern of racketeering activity alleged here. At most, plaintiff has alleged a scheme to accomplish one discrete goal, which he alleges was accomplished. That is insufficient to state a claim for relief under RICO.") (internal quotations and citations omitted).

allege that the defendants were engaged in a pattern of racketeering activity.

B. The Securities Claims: Appellants Abandoned Their Claims

With respect to Appellants' securities claims, the district court held that Appellants had failed to state a claim upon which relief can be granted. On appeal, Appellants merely recite the law, listing the elements of the claim, and then in one short sentence make a conclusory assertion that all elements have been properly pled. We conclude that the claim has been abandoned for failure to present any argument in support thereof. See Fed. R. App. P. 28(a) ("appellant's brief must contain . . . the argument, which must contain . . . appellant's contentions and the reason for them"); Perera v. U.S. Fidelity and Guar. Co., No. 06-10925, slip op. 158, 164 n.4 (11th Cir. Oct. 9, 2008) (concluding that a brief must be sufficiently precise to alert the court to the party's argument). The brief's mere citation by number of 83 paragraphs in the complaint is insufficient to preserve the issue.

C. Appellants Failed to Plead with Particularity

Alternatively, with respect to the securities claims, we hold also that Appellants' complaint fails to satisfy the particularity requirements of Fed. R. Civ. P. 9(b) and the PSLRA. Claims based on securities fraud must be stated with the particularity required by Rule 9(b) and the PSLRA. See Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). Under the PSLRA, the complaint

11

must plead fraud with particularity and allege facts giving rise to a strong inference of scienter. Phillips v. Scientific-Atlanta, Inc., 374 F.3d 1015, 1016 (11th Cir. 2004). Specifically, the plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Garfield, 466 F.3d at 1262 (citing 15 U.S.C. § 78u-4(b)(1)). Under Rule 9(b), plaintiffs must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. Id.

In shotgun style pleading, the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief. Neither this Court nor the district court is required to parse the complaint searching for allegations of misrepresentations that could conceivably form the basis of each of Appellants' claims. Appellants were required to clearly connect each factual allegation to the appropriate count in the complaint in order to satisfy Rule 9(b). See Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279-80 (11th Cir.

2006).[8]  However, despite this serious defect, we have carefully examined all the factual allegations in the complaint and construed them in the light most favorable to Appellants, and conclude that the alleged misrepresentations were stated with insufficient particularity.[9]

---

[8]  When presented with a shotgun complaint, the district court should order repleading sua sponte.  See Wagner, 464 F.3d at 1280.  As we have noted on several recent occasions, shotgun pleadings "wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently."  Id. at 1279.  Nonetheless, because there are clear grounds to affirm and the interest of efficiency would not be served by a remand, we proceed to resolve the dispute.

[9]  Below we address the allegations in the complaint that are stated with the most clarity.  Other allegations are so lacking in any specificity as to not warrant discussion.  We also note that while the allegations in Paragraphs 27-32 of the complaint lay the factual background for the complaint it is clear that these events are not included in the securities counts, which allegedly began when Browning and Sireci misrepresented that they would convey the Durbin/Williams interests to Ferrell.

In Paragraph 42, Appellants allege that "upon information and belief, Browning used the wires to breach Settlement Agreement I's strict confidentiality provisions by informing Wolfe and other Defendants of its terms."  However, Appellants failed to allege with particularity any factual basis upon which that information and belief was formed.

In Paragraph 44, Appellants allege that Browning e-mailed Ferrell on February 16, 2005 and falsely assured Ferrell of his intention to transfer the Durbin/Williams units to Ferrell despite the fact that Browning knew that the Durbin/Williams units had already been purchased by Wolfe, Serelis, Baetz, Jelsenianski and Botway.  Here, the complaint fails to allege with particularity facts giving rise to a strong inference that Browning was aware of the prior transfer.

In Paragraph 55, Appellants state that Serelis, Smith and Wolfe faxed Ferrell a bogus contract of sale in order to drive up the purchase price of The Boatslip.  Appellants alleged: "Upon information and belief, there was never a bona fide, arms-length offer to purchase the Hotel."  However, Appellants failed to plead with particularity any facts upon which that information and belief was formed.

In Paragraph 65, Appellants allege that "one or more Defendants" communicated with The Boatslip's mortgagees and encouraged them to refuse to consent to subordinated financing.  This does not sufficiently identify the precise nature of the alleged misrepresentation or the

13

We note that Appellants filed no motion in the district court seeking leave to amend and their cursory and conditional request to amend in their response in opposition to defendants' motion to dismiss failed to adequately apprise the district court of the substance of allegations that would satisfy the particularity requirements with respect to the securities claims or the continuity requirement with respect to the RICO claims.  See Long v. Satz, 181 F.3d 1275, 1279-80 (11th Cir. 1999).  Thus, under the circumstances here, we decline to require the district court to sua sponte grant leave to amend.

## III.  CONCLUSION[10]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[11]

---

person responsible for it.

In Paragraph 72, Appellants allege that Serelis sent a fraudulent e-mail representing that the Company could not obtain a second mortgage on the Hotel and had to resort to private financing at 18%.  However, Appellants do not allege with particularity facts to support the conclusion that this e-mail was misleading.  The only factual allegation is a bald assertion in Paragraph 73 that there was sufficient equity in the Hotel to obtain a loan.

[10]    Other arguments of Appellants are rejected without need for further discussion.

[11]    The post-argument submissions and/or motions are denied as moot, in light of the fact that our disposition of this case made it unnecessary to address the issue upon which they focused.