PALM BEACH COUNTY ENVIRONMENTAL COALITION, et al., Plaintiffs,

v.

The State of FLORIDA, et al., Defendants,

Florida Power and Light Company, Applicant–Intervenor.

Case No. 08–80553–CIV.

United States District Court, S.D. Florida.

July 27, 2009.

Barry Morris Silver, Barry M. Silver PA, Boca Raton, FL, David P. Reiner, II, Reiner & Reiner PA, Miami, FL, for Plaintiffs.

Jonathan A. Glogau, Attorney General Office, Kenneth B. Hayman, Department of Environmental Protection, Richard Stephen Brightman, Hopping Green & Sams, Tallahassee, FL, Mark A. Brown, Kristofor R. Swanson, Norman L. Rave, Jr., United States Department of Justice, Washington, DC, Dawn Marie Kelly, Lorin Louis Mrachek, Page Mrachek Fitzgerald & Rose, Leon St. John, III, Palm Beach County Attorney's Office, West Palm Beach, FL, for Defendants.

Gerard Joseph Curley, Jr., Gunster Yoakley & Stewart, West Palm Beach, FL, Robert Anthony Malinoski, Gunster Yoakley & Stewart, Fort Lauderdale, FL, for Applicant–Intervenor.

## OMNIBUS ORDER

### GRANTING [DE 60, 69, 70, 71, 73, and 84]

### DENYING [DE 49 and 91]

### DENYING AS MOOT [DE 21, 24/25, 48, 62, 87, 89, 90, 96, and 97]

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the court on Defendants, State of Florida Department of Environmental Protection and Secretary Michael W. Sole's (collectively, "DEP") motion to dismiss plaintiff's amended complaint [DE 60]; Palm Beach County's motion to dismiss the amended complaint [DE 69]; the State of Florida and Governor Charlie Christ's amended motion to dismiss the amended complaint (collectively, "State Defendants") [DE 70]; Gulfstream Natural Gas System, L.L.C.'s ("Gulfstream") motions to dismiss plaintiff's amended complaint [DE 71]; the United States Army Corps of Engineers and Lt. Gen. Robert L. Van Antwerp's (collectively, "Army Corps") second motion to dismiss the amended complaint [DE 73];

Palm Beach Aggregates, Inc.'s ("Aggregates") motion to dismiss the amended complaint [DE 84]; [1] and intervenor-defendant, Florida Power & Light Company's ("FPL") motion to dismiss the amended complaint [DE 48]. In this motion, when referred to collectively, Gulfstream and Aggregates will be called "Private Defendants." Also, the State of Florida, Governor Crist and the DEP will be referred to collectively as the "State Defendants." [2] I have reviewed the record and am advised in the premises.

## I. Factual Background [3]

In 2005, intervenor-defendant Florida Power & Light Company ("FPL") began to build a new power plant, the West County Energy Center ("WCEC"), to be located in Palm Beach County, Florida. To supply the WCEC, Gulfstream began to build a new natural gas pipeline from Martin County to the WCEC. [DE 13 ¶ 55–60]. The path of the proposed pipeline impacts federal jurisdictional waters. Therefore, both projects require federal permits from the Army Corps under the Clean Water Act ("CWA") and the Rivers and Harbors Act ("RHA"). [DE 13, ¶ 61, 69]. The South Florida Water Management District ("SFWMD") issued a 20-foot–wide easement to Gulfstream, authorizing installation of the pipeline within areas known as the L–8 and L–65 canal rights-of-way, and a 95–foot–wide temporary construction easement along the route. [DE 13, ¶ 62]. The pipeline route passes through 122 water bodies as well as

various state-owned wildlife conservation areas that are home to the wood stork, the Southeastern American kestrel, the crested caracara, the bald eagle, the Eastern indigo snake, and the gopher tortoise, whose burrows are located along the berm of the L–65 Canal. [DE 13 ¶ 63–67].

Public meetings on the proposed WCEC were held over the summer of 2006, during which Plaintiffs, the Palm Beach County Environmental Coalition ("PBCEC"), participated. PBCEC also participated in an Administrative Hearing before Administrative Law Judge Mahoney, where their environmental concerns were ignored. The group's concerns were also ignored when they traveled to Tallahassee, Florida to request that former-Governor Bush and his cabinet allow more time for state agencies, federal agencies, and the public to review the project.

Thereafter, the permitting process began with Plaintiff's intermittent objections. In December of 2006, the Florida Natural Gas Storage Company, LLC ("FGS") requested that the Federal Energy Regulatory Commission ("FERC") initiate the National Environmental Policy Act ("NEPA") pre-filing process for a future phase of the project. Plaintiffs allege that they discovered documents authored by the Florida Fish & Wildlife Commission ("FWC"), including an October 17, 2005, letter expressing its concern about the WCEC's potential to harm fish and wildlife. [DE 13, ¶ 48]. Plaintiffs do not specify to whom the letter was sent, but allege

---

1. The Aggregates' motion to dismiss was filed after Plaintiffs filed their response in opposition to the other defendants' motions to dismiss. Plaintiffs did not file a response in opposition to the Aggregates' motion to dismiss. As such, the Court will consider Plaintiffs' consolidated response to be responsive to the Aggregates' motion to dismiss.

2. In Plaintiffs' amended complaint, they define "State Defendants" to include Palm

Beach County. In this Order, "State Defendants" will only refer to the DEP, Secretary Sole, the State of Florida, and Governor Crist. Palm Beach County's arguments will be addressed separately.

3. All factual allegations in the Complaint are considered by the Court to be true at this stage in the proceedings.

that the letter and other documents were not made a part of the record when then Governor and the Cabinet held a hearing on the proposed WCEC plant on December 19, 2006. [DE 13, ¶ 47]. Plaintiffs further allege that the power plant project received final certification from the State prior to FWC review. [DE 13, ¶ 51].

During the summer of 2007, construction began on the WCEC Project segment, despite incomplete permitting, according to Plaintiffs. [DE 13, ¶ 52]. In September of 2007, the pipeline's route "was changed with minimal review and was resubmitted for a permit." *Id.* On December 13, 2007, the South Florida Water Management District ("SFWMD") voted to approve selling a canal right-of-way to Gulfstream for the pipeline. [DE 13, ¶ 53]. Plaintiffs allege that a SFWMD Governing Board Member, Bubba Wade, had "undisclosed financial interests in the affected area," yet nonetheless participated in the voting and voted for the sale. [DE 13, ¶ 53]. The Complaint does not elaborate on Mr. Wade's alleged financial interests. On April 4, 2008, construction of the Gulfstream Pipeline began at the Couse Midden archaeological site, obstructing the gopher tortoise habitat.

Finally, the Army Corps authorized work on the pipeline and the WCEC under a reissued Nationwide Permit 12 ("NWP 12"), which allows utility line activities. [DE 13, ¶ 74]. Plaintiffs allege that the Corps then expanded the authorized work to include construction of a cooling water inlet structure to and within the L–10/12 Canal, causing adverse environmental impact. [DE 13, ¶ 75].

Plaintiffs allege that the pipeline segment described above and the WCEC plant are part of "an even larger series of segmented historic projects." Instead of "finding significant cumulative environmental impacts from the entire, unsegmented projects and supplementing earlier [Environmental Impact Statements ("ESI")], [Environmental Assessments ("EA")] were generated for discrete additions to the earlier phases of the historic project by the Corps of Engineers for the purpose of segmenting these projects and circumventing CWA and Rivers and Harbors Act ("RHA") permitting, and requirements under NEPA to fairly evaluate the cumulative environmental impacts of the entire project. . . ." [DE 13, ¶ 71, 72]. In short, Plaintiffs allege that officials evaluated only the pipeline segment and the WCEC plant, which they allege are merely single elements of a larger project under the NEPA guidelines. Plaintiffs assert that the officials should have evaluated the developments as a whole, but did not do so, in order to circumvent various environmental protection laws.

Plaintiffs allege that the pipeline and WCEC will release "at least 12 million tons of greenhouse gases ($CO_2$) per year, will release thousands of tons of other noxious gases in and around sensitive wildlife and natural areas, will consume at least 6.5 billion gallons of water per year at a time of extreme drought in the region, and will literally fuel continued uncontrolled western growth of Palm Beach County, which in turn will destroy the agricultural base of this region and destroy our quality of life still further." [DE 13, ¶ 73].

Plaintiffs also recall former Palm Beach County Commissioners, Tony Masilotti and Warren Newell, who both plead guilty in federal public corruption prosecutions. Although Palm Beach County is a defendant in this action, Masilotti and Newell are not parties to this action. According to Plaintiffs, the misdeeds of the erstwhile Commissioners tainted the state proceedings availing land for the WCEC. Plaintiffs cite to the Factual Basis for Tony Masilotti's Federal Indictment that stated: "Masi-

lotti had his brother ... contact ... the President of Palm Beach Aggregates for the purpose of buying an option to purchase ... land ... owned by the Aggregates." [DE 13, ¶ 44]. Count 16 of the indictment continues, "... after receiving this option, Masilotti ... voted ... to allow Aggregates to have [FPL] build a power plant on a different portion of Aggregates property...." *Id.* Finally, "Masilotti voted on this measure in February 2004 without disclosing to the public that he and his brother Paul Masilotti had a concealed financial interest in the Aggregates property holdings." *Id.*

Plaintiffs further state that former commissioner Warren Newell failed to disclose his 19% ownership of a company that was to receive money from the "anticipated" contract between the SFWMD and the Aggregates "concerning regional water storage" when he voted on the same. [DE 13, ¶ 45].

## II. Procedural History

On August 25, 2008, Plaintiffs filed an amended complaint [DE 13] for declaratory and injunctive relief against the above named defendants,[4] seeking to stop the construction of the WCEC. Plaintiffs allege that the WCEC will "have devastating and irreversible consequences upon the environment ... [and will] exacerbate global warming, the release of thousands of tons of noxious gases and chemicals into the surrounding environment of the WCEC, which borders the Loxahatchee National Wildlife Refuge and the Corbett Wilderness Area, the deep well injection of large amounts of pollutants into Florida's aquifer in ways that are untested and·unprecedented, the opening up for development of huge areas of current open space, Everglades buffer land and farmland, the loss of much wildlife habitat and further destruction of wildlife and endangered species due to the construction and operation of the WCEC, and other specified environmental harm...." [DE 15, ¶ 3].

The amended complaint [DE 13] for declaratory and injunctive relief, alleges eight counts:

(1) Violations of the Clean Air Act;

(2) Violations of the National Environmental Policy Act;

(3) Violations of the Endangered Species Act;

(4) Violations of the Clean Water Act and the Rivers and Harbors Act;

(5) Violations of Section 373.013, *et seq.*, Florida Statutes, the Florida Water Resources Act (FWRA)[5];

(6) Violation of Section 286.011, Florida Statutes, Government in the Sunshine Law;

(7) Violation of Federal RICO statutes; and

(8) Violation of Florida RICO statutes.

---

**4.** Florida Power & Light Co. is an intervenor-defendant.

**5.** This Count also referenced alleged violations of Section 403.529, Florida Statutes, the Power Line Siting Act. Rule 10(b), Federal Rules of Civil Procedure, states in relevant part: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count...." For purposes of clarity, a claim under the Power Line Siting Act should be brought in a separate count as that of a claim under the Florida Water Resources Act. Although I disagree with certain defendants' characterizations of the references to this Act as simply "generalized rants," [DE 60 at 12] the references also do not state a claim. Therefore, the allegation of violations of § 403.529 will not be considered as a separate cause of action, or considered to state a claim at all.

On September 2, 2008, Plaintiffs filed an emergency motion for temporary injunctive relief [DE 15]. They sought an order enjoining further construction, planning or financing of the proposed WCEC project, including but not limited to, the Gulfstream pipeline. They further sought an order declaring that all permits and approvals granted by any governmental agencies or bodies, including the defendants, in favor of the WCEC, are invalid.

On October 6, 2008, this Court held a hearing on Plaintiffs' emergency motion [DE 15], and Plaintiff's motion was denied at the time of the hearing. This Court issued a written Order [DE 65] denying plaintiffs' emergency motion on November 18, 2008, 587 F.Supp.2d 1254 (S.D.Fla. 2008). Subsequently, the majority of the defendants filed motions to dismiss the second amended complaint, the last one filed on January 27, 2009. Plaintiffs filed a consolidated response in opposition [DE 75] to most of the motions to dismiss on December 15, 2008.

### III. Legal Standard for a Motion to Dismiss

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993). Conclusory allegations in the complaint need not be taken as true and the plaintiff must allege sufficient facts to sup-

port his allegations. *Marine Coatings of Alabama, Inc. v. United States,* 792 F.2d 1565, 1568 (11th Cir.1986). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Id.*

### IV. The Claims against the DEP and Secretary Sole and the State of Florida and Governor Crist [DE 60 and 62]

The DEP and Governor Crist and the State of Florida have presented many common arguments in their motions to dismiss, and Plaintiffs' response addresses the two motions collectively. Therefore, I have combined the analysis for those two motions into one section in this Order. I will first summarize the grounds for dismissal argued in the DEP and Secretary Sole's motion, and then summarize the grounds for dismissal argued in the State of Florida and Governor Crist's motion. Then, I will address the law on those issues and Plaintiffs' consolidated arguments made in response to these two motions. As noted above, I will refer to Secretary Sole, the DEP, Governor Crist, and the State of Florida collectively as the "State Defendants."

In its motion to dismiss [DE 60], DEP argues generally that (1) the federal claims should be dismissed because Court doesn't have jurisdiction over the Department or Secretary Sole because sovereign immunity bars Plaintiffs' claims; (2) the Court doesn't have jurisdiction over the supple-

mental state claims; (3) Plaintiffs did not effect service of process on them. DEP and Secretary Sole also put forth more specific challenges to individual counts.

The State of Florida and Governor Charlie Christ's motion to dismiss [DE 62] is similar. They move for dismissal for lack of jurisdiction over the federal claims because they have not waived Eleventh Amendment immunity by consenting to this suit through clear legislative statement, or otherwise. Further, they argue a lack of pendant jurisdiction. In addition, the State and the Governor allege that the Plaintiffs failed to serve Defendants within 120 days after the complaint was filed, in

violation of Rule 4(m), but do not offer specifics as to when the State Defendants were served. Finally, they argue that although the Governor is mentioned in the amended complaint, the Plaintiffs failed "to make any allegation relating to the actions of the Governor," and that Plaintiffs have failed to allege "any action by the Governor which can be construed as a continuing violation of any law."

## A. Notice Requirements [6]

 The State Defendants argue that Plaintiffs failed to fulfill the 60–day CAA citizen-suit notice requirement. Count One was brought under the CAA. In its

---

**6.** The Plaintiffs respond first to the service of process issue raised by the State Defendants, and all other defendants. They filed the original complaint on May 23, 2008. According to Plaintiffs' response and the docket, summonses were issued for Governor Crist and the DEP on October 1, 2008. Therefore, Plaintiffs could not have been served until on or after October 1, 2008. The summonses were not issued until 131 days after the complaint was filed. However, Plaintiffs assert, "... that issue is moot." The Court is not entirely sure how Plaintiffs argue that, ultimately, service upon a defendant outside the time allowed in Rule 4(m) moots the matter, and therefore, I do not consider it as moot for the purposes of this motion.

With regard to service of process, Federal Rule of Civil Procedure 4(m) states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against the defendant that or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Thomas v. Box*, 231 Fed.Appx. 858, 860 (11th Cir.2007), *citing Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir.1990).

In this case, the first iteration of the complaint was filed on May 23, 2008. Summons were not issued until October 1, 2008. [DE

33–37]. Plaintiffs never sought an extension of time to perfect service of process against any defendant. Plaintiffs' response [DE 75] does not directly address the issue of service of process in the section of the brief responding to the State Defendants' motions to dismiss. Instead, it addresses the failure of service of process in response to the Federal Defendant's motion to dismiss. However, I will set forth Plaintiffs' argument concerning service of process of the Federal Defendants in this section of the Order. Plaintiffs state:

> As to the issue of service, the Plaintiffs filed their Complaint herein on May 23, 2008 and, prior to the issuance of summonses, the Federal Defendants [Army Corps and Lt. Gen. Robert L. Van Antwerp] received copies of the Complaint, filed general Notices of Attorney Appearance (DE–3) (DE–4) and (DE–6) communicated with Plaintiffs' counsel regarding the case, filed a motion to dismiss, received a copy of the Amended Complaint *via* CM/ECF, filed a motion for continuance, filed responses to the Plaintiffs' motion
> [DE 75, p. 3]

A summons was not issued to the State Defendants until October 1, 2008 [DE 37], and more than 120 days elapsed between the filing of the complaint and the service of process on the State Defendants. Therefore, Plaintiffs have failed to effect service of process on those defendants pursuant to Rule 4(m), Fed.R.Civ.P.

motion to dismiss, the DEP adopts FPL's argument [DE 48, p. 10–11] that the Plaintiffs failed to satisfy the 60–day notice provision required before filing suit under the CAA. The Eleventh Circuit has summarized the effective functioning of this requirement in *Sierra Club v. Georgia Power Co.*, 443 F.3d 1346 (11th Cir.2006):

" '[T]he citizen suit is meant to supplement rather than to supplant governmental action.' " *Am. Canoe Ass'n, Inc. v. City of Attalla*, 363 F.3d 1085, 1089 n. 5 (11th Cir.2004) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S.Ct. 376, 383, 98 L.Ed.2d 306 (1987)). As such, prior to initiating litigation, a citizen enforcer must notify the EPA, the alleged violator, and the relevant state agency of the citizen's intent to sue. 42 U.S.C. § 7604(b). The citizen enforcer may not sue until sixty days after sending the notice letters, and his lawsuit is barred if "the [EPA] Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order." 42 U.S.C. § 7604(b)(1)(B). *Sierra Club*, 443 F.3d at 1349–50.

Specifically, the 42 U.S.C. § 7604(b), Citizen Suits, states:

**(b) Notice**

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) Prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard . . .

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(i)(3)(A) or (f)(4) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

42 U.S.C. § 7604(b).

The provision calling for the notice and 60–day delay "allows the appropriate agency to undertake enforcement action in the interim." *Adair v. Troy State University of Montgomery*, 892 F.Supp. 1401, 1405 (M.D.Ala.1995), citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 29, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989). The notice requirement also "provides a delay period in which the alleged violator can take steps in order to bring itself into compliance." *Id.*, citing *Hallstrom*, 493 U.S. at 29, 110 S.Ct. 304; *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 60, 108 S.Ct. 376, 382, 98 L.Ed.2d 306 (1987).

Because Plaintiffs failed to provide notice as required by the CAA, dismissal of that Count is appropriate.

**B. Eleventh Amendment Immunity**

■ A State's Eleventh Amendment immunity extends to state agencies and other arms of the state. *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir.1990), *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984) (in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment). The State Defendants claim that they have not consented to participate in this proceeding, and therefore the Court lacks jurisdiction.

In their consolidated response [DE 75], Plaintiffs address Eleventh Amendment immunity, and argue that because defendants "willfully violated State laws for the purpose of securing approval for the federally permitted Gulfstream Pipeline and

West County Energy Center," the state defendants waived immunity by participating in the federal permitting process. [DE 75, p. 10]. Plaintiffs exclusively rely on *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Idaho v. Coeur d'Alene Tribe of Idaho*,[7] 521 U.S. 261, 296, 298–299, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) to argue that the Court has jurisdiction.

■ In *Ex parte Young*, the Supreme Court explained that the Eleventh Amendment affords states immunity from suits, both legal and equitable, but recognizes an exception for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law or violations of a federally protected right. *Badillo v. Thorpe*, 158 Fed.Appx. 208, 212, FN. 6 (11th Cir.2005) (citations and quotations omitted). *See also Johnson v. Florida*, 348 F.3d 1334, 1342 (11th Cir.2003). Further, state's sovereign immunity under the Eleventh Amendment is not absolute; states are not immune from suit if circumstances indicate consent, congressional abrogation of immunity, or legal fiction of *Ex Parte Young* that permits federal injunction to force a state officer to comply with federal law. *Seminole Tribe of Florida v. State of Fla.*, 11 F.3d 1016, 1021 (11th Cir.1994). Finally, "[a] leading treatise has concluded that '[t]he best explanation of *Ex Parte Young* and its progeny is that the Supremacy Clause creates an implied right of action for injunctive relief against state officials who are threatening to violate the federal Constitution or laws.' " *Legal Environmental Assistance Foundation, Inc. v. Pegues*, 904 F.2d 640, 643 (11th Cir.1990), *citing* 13 B.C. Wright, A. Miller & E. Cooper, Fed.Prac. & Proc. § 3566 at 102 (2d ed. 1984). Plaintiffs have not alleged that a state official, Secretary Sole, Governor Crist, or the Department of Environmental Protection, is currently acting in violation of federal law. Therefore, the exception in *Ex Parte Young* is not applicable to the case at hand. Plaintiffs have not articulated any exception to sovereign immunity that applies in this case, therefore sovereign immunity bars Plaintiffs' claims.

## C. The Pendant State Law Claims

The State Defendants argue that this Court does not have supplemental jurisdiction over the state law claims—Counts V, VI, and VIII—due to Eleventh Amendment immunity. The state law claims are (1) violations of the Florida Water Resources Act, Section 373.013, Florida Statutes; (2) violation of the Government in the Sunshine Laws, Section 286.011, Florida Statutes; and (3) violation of Florida RICO statutes.

■ Plaintiffs respond by claiming that the alleged state law violations are inexorably intertwined with the federal claims, and therefore this Court should exercise supplemental jurisdiction. [DE 75, p. 10]. However, Eleventh Amendment immunity also attaches to state law claims, and it is an "intrusion on state sovereignty … when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106, 121, 104 S.Ct. 900. And, as with the federal claims, the State De-

---

**7.** Plaintiffs state that "a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," however, that citation comes from a concurrence in *Idaho*, in which Justice O'Connor, joined by Justice Scalia and Justice Thomas, wrote that "the principal opinion *replaces* a straightforward inquiry." *Idaho*, 521 U.S. at 296, 117 S.Ct. 2028 (emphasis added). The second set of pages cited by Plaintiffs, 298–299, actually constitutes part of the dissent, authored by Justice Souter, joined by Justice Stevens, Justice Ginsburg, and Justice Breyer.

fendants have not consented to this suit or waived immunity. For those reasons, the federal and state law claims against the State Defendants should be dismissed.

The State Defendants also raise various other arguments as to why the claims should be dismissed, discussed below. In their response [DE 75], the Plaintiffs do not address the State Defendant's following arguments for the dismissal of various claims.

## D. Other Grounds for Dismissal

### (i) Jurisdictional Requirements under NEPA (Count II)

■ Count II alleges that the construction of the Gulfstream Natural Gas Pipeline ("the Pipeline") violates NEPA. Plaintiffs take issue with the Corps' issuance of authorizations and permits under the CWA and RHA to build the pipeline, allegedly done without preparing "adequate environmental analysis and documentation as required by NEPA." [DE 13, ¶ 143]. Plaintiffs claim that the Corp. failed to evaluate the "environmental impacts of the direct and indirect release of more than 12 million tons of C02 into the atmosphere per year; the use of at least 6.5 billion gallons of water per year ..." etc. [DE 13, ¶ 144]. Essentially, in Count II, although the Corps only issued permits relating to the pipeline, Plaintiffs claim that the Corps should not have issued the NWPs for the Pipeline without taking into account the alleged environmental harm of the new WCEC facility.

Count II also alleges that the State Defendants also "failed to evaluate the environmental impacts." [DE 13, ¶ 144]. To the extent that Count Two is alleged against the State Defendants, Plaintiffs fail to state a claim under NEPA because NEPA applies only to federal agencies. *See* 42 U.S.C. § 4332("... all agencies of the Federal Government shall ..."). As

such, Plaintiffs do not state a claim against the State Defendants in Count II.

### (ii) Mootness

The State Defendants argue that Plaintiffs fail to state a claim under the Endangered Species Act, the Clean Water Act, and the Rivers and Harbors Act because the allegations are solely directed at the Army Corps. In addition, they argue that the claims made under these statutes are moot because the natural gas pipeline and the cooling water inlet structure have been completed. Plaintiffs do not contest these statements.

### (iii) Abstention and Exhaustion of Administrative Remedies

Count V alleges the violations of Section 373.013, *et seq.*, Florida Statutes, the Florida Water Resources Act ("FWRA"). The State Defendants also state that these claims are barred by the abstention doctrine. Specifically, they say that Plaintiffs administratively challenged the permits related to the WCEC, resulting in a Recommended Order from an Administrative Law Judge, and ultimately, a Final Order from the Department. Plaintiffs have appealed both orders to the Fourth District Court of Appeals and both appeals are currently pending. The State Defendants argue that under the Younger abstention doctrine, federal courts should abstain from hearing those matters that are pending before a State Court, citing. *Younger v. Harris*, 401 U.S. 37, 41–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Trainor v. Hernandez*, 431 U.S. 434, 444–446, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), and 28 U.S.C. § 2283 (Anti–Injunction Act). Finally, for the WCEC-related permit that was not challenged, DEP argues that Plaintiffs have failed to exhaust administrative remedies, and therefore cannot bring the claim.

In response to the State Defendants' raising the Abstention Doctrine issue, the Plaintiffs state that there is currently "only one administrative action pending with respect to permits and approval issued by the State actors: an appeal of an administrative order confirming the Underground Injection Control permit issued to FPL." [DE 75 at 11]. Plaintiffs state that the outcome of that appeal is "not determinative of any issue presently before this Court and the Younger and Burford abstention doctrines are not implicated. Further, the exhaustion of state law remedies is not a prerequisite to any claim brought by the Plaintiffs herein. *Id.* Due to the jurisdictional defects set forth above, it is not necessary for the abstention and exhaustion issued argued by the parties.

### (iv) Failure to State a RICO Claim

Finally, with regard to the Florida RICO claims and the Federal RICO claims, the State Defendants argue that they are not specifically directed towards them, and therefore Plaintiffs have not stated a cause of action. As of the date of the issuance of this Order, Plaintiffs have not complied with S.D. Local Rule 12.1 requiring them to file a RICO Case Statement within 30 days of the filing of a pleading that contains a federal or State RICO Claim.

### V. The U.S. Army Corps of Engineers and Lt. Gen. Van Antwerp's (the "Federal Defendants") Motion to Dismiss [DE 73]

The Federal Defendants move to dismiss all four of the claims alleged against them: Count I (violations of the CAA); Count II (violations of NEPA); Count III (violations of the ESA); and Count IV (violations of the CWA and RHA). In their response, Plaintiffs concede that they "may not be able to sustain Count III." [DE 75 at 4].

### A. Failure of Service of Process

As with other defendants, the Federal Defendants claim that the service of process was fatally flawed. Specifically, the Federal Defendants argue that Plaintiffs failed to comply with Fed.R.Civ.P. 4(i)(1), which states how a federal defendant must be served. Rule 4(i)(1) states, in relevant part:

**(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**

**(1) United States.** To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

**(2) Agency; Corporation; Officer or Employee Sued in an Official Capacity.** To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

As explained above, Plaintiffs filed the complaint on May 23, 2008. According to the Federal Defendants, Plaintiffs first attempted to serve the Office of the United States Attorney on November 18, 2008, via Federal Express delivery. In support of this allegation, Defendants attached, as an exhibit, a Federal Express label showing the November 18, 2008 date. Defendants argue that because they were not properly served under Rule 4(i)(1), Fed.R.Civ.P., the action must be dismissed.

As other defendants argued above, the Federal Defendants further argue that Plaintiffs failed to serve them within 120 days of filing the complaint pursuant to Fed.R.Civ.P. 4(m), and therefore, this Court lacks jurisdiction over the Federal Defendants, citing *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317(11th Cir. 1990).

■ As also discussed above, the federal defendants argue that Counts I and III (violations of the CAA and ESA, respectively) should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), for failure to give the requisite notice of intent to sue. The Federal Defendants also argue for the dismissal of Count I (violations of the CAA), pursuant to Fed.R.Civ.P. 12(b)(6), because Plaintiffs failed to claim that the Corps has violated or is in violation of either an emission standard or limitation under the CAA, or order issued by the EPA or the State of Florida pursuant to the CAA. Because Plaintiffs failed to plead this, they have failed to state a cause of action against the Federal Defendants under 42 U.S.C. § 7604(a)(1), which states:

> (a) Authority to bring civil action; jurisdiction
>
> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation

. . .

42 U.S.C. § 7604(a)(1)

The Federal Defendants also contend that the Court lacks subject matter jurisdiction over Counts II, III, and IV that challenge the Corps' March 28, 2008, decision to issue an NWP 12 verifications, authorizing the crossing of the L–65 Canal, two agricultural ditches, and the L–8 Canal by a natural gas pipeline.[8]

**B. The Subject Matter Jurisdiction and the Natural Gas Act**

■ Plaintiffs bring Counts II, III, and IV under the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*, the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, the Clean Water Act, 33 U.S.C. § 1251 *et seq,* and the Rivers and Harbors Act, 33 U.S.C. § 403, *et seq.* United States District Courts have subject matter jurisdiction for citizen suits brought under these acts. However, the Federal Defendants contend that while Plaintiffs' complaints are formally brought under those acts, the substance of Plaintiffs' claims challenge the Corps' issuance of permits for the natural gas pipeline. Based on that premise, the Federal Defendants contend that such challenges to natural gas facility permitting are governed by the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.* Furthermore, the NGA mandates

---

8. Although the Federal Defendants make this argument for Counts Two, Three, and Four only, it applies equally to Count One, as will be discussed below.

that the United States Courts of Appeals—not the United States District Courts—have original jurisdiction over such challenges. Therefore, the Federal Defendants argue that even though Plaintiffs' claims relating to the Corps' issuance of permits for the Pipeline and the WCEC segments are brought under CAA, NEPA, ESA, and the CWA/RHA, the NGA controls with respect to determining jurisdiction.

The Natural Gas Act of 1938 comprehensively regulates the transportation and sale of natural gas in interstate commerce. *Islander East Pipeline Co., LLC v. McCarthy,* 525 F.3d 141 (2nd Cir.2008). Natural gas companies are subject to the exclusive jurisdiction of the Federal Energy Regulatory Commission ("FERC"). 42 U.S.C. § 7172(a)(1). *Islander East,* 482 F.3d 79 at 83. Further, "Pursuant to section 7 of the NGA, a natural gas company must obtain from the FERC a "certificate of public convenience and necessity" before it constructs, extends, acquires, or operates any facility for the transportation or sale of natural gas in interstate commerce. 15 U.S.C. § 717f(c)(1)(A) [9]. The FERC is required to issue such a certificate if it finds the company "is able and willing" to comply with the federal regulatory scheme and the proposed project "is or will be required by the present or future public convenience and necessity," but the FERC may attach "to the issuance of the certificate . . . such reasonable terms and conditions as the public convenience and necessity may require." *Id.* § 717f(e)." *Id.*

In 2005, the NGA was amended by Congress's enactment of the Energy Policy Act of 2005 (EPACT), Pub.L. No. 109–58, 119 State. 594. Section 313(b) of the Act amended § 19 of the NGA to afford United States Courts of Appeals "original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency . . . acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval . . . required under Federal law" for the construction of a natural gas facility. 15 U.S.C. § 717r(d)(*l*). The section states:

> (d) Judicial review
>> (1) In general
>>> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit,

---

**9.** 15 U.S.C. § 717f(c)(1)(A), with emphasis added states:

> **No natural-gas company** or person which will be a natural-gas company upon completion of any proposed construction or extension **shall** engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, or **undertake the construction or extension of any facilities** therefor, or acquire or operate any such facilities or extensions thereof, **unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations:** Provided, however, That if any such natural-gas company or predecessor in interest was bona fide engaged in transportation or sale of natural gas, subject to the jurisdiction of the Commission, on February 7, 1942, over the route or routes or within the area for which application is made and has so operated since that time, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission within ninety days after February 7, 1942. Pending the determination of any such application, the continuance of such operation shall be lawful.

license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

15 U.S.C. § 717r(d)(1)

Chief Judge Restani wrote in *Islander East Pipeline Co., LLC v. Connecticut DEP*, 482 F.3d 79 (2d Cir.2006) (referred to hereinafter as "*Islander I*"):

The limited legislative history accompanying the EPACT indicates that Congress enacted section 19(d) because applicants, like Islander East, were encountering difficulty proceeding with natural gas projects that depended on obtaining state agency permits. *See* Reg'l Energy Reliability & Sec.: DOE Auth. to Energize the Cross Sound Cable: Hearing Before the H. Subcomm. on Energy & Air Quality, 108th Cong. 8 (2004) (statement of Rep. Barton) (discussing an earlier version of the EPACT, and explaining that "the comprehensive energy bill requires States to make a decision one way or another, and removes the appeal of that decision to Federal court," which "will help get projects, like the Islander East natural gas pipeline, constructed"); Natural Gas Symposium: Symposium Before the S. Comm. on Energy & Natural Res., 109th Cong. 41 (2005) (statement of Mark Robinson, Director, Office of Energy Projects, FERC) (observing that, prior to the enactment of the EPACT, NGA applicants were subject to "a series of sequential administrative and State court and Federal court appeals that [could] kill a project with a death by a thousand cuts just in terms of the time frames associated with going through all those appeal processes").

*Id.* at 85.

The Federal Defendants argue that "transmission pipelines" are included within the definition of "facility" in 15 U.S.C. § 717f(c)(*l*)(A), pursuant to 18 C.F.R. § 2.55. 18 C.F.R. § 2.55 defines "facilities" to exclude various things, including: "[i]nstallations ... which are merely auxiliary or appurtenant to an authorized or proposed transmission pipeline system and which are installations only for the purpose of obtaining more efficient or more economical operation of the authorized or proposed transmission facilities...." 18 C.F.R. § 2.55(a)(1). While this section of the statute does not affirmatively define "facilities" to be "transmission pipelines," specifically with regard to 15 U.S.C. § 717f, Plaintiffs do not contradict this position. In addition, a Second Circuit Court of appeals considered the proposed construction of a natural gas pipeline across the Long Island Sound between Connecticut and New York to be covered by the jurisdictional requirements of 15 U.S.C. § 717r(d)(1), and the proposed natural gas pipeline in the case at hand is similar, also crossing navigable waters and subject to similar regulatory control. *See Islander East Pipeline Co., LLC v. McCarthy*, 525 F.3d 141 (2nd Cir.2008)(referred to hereinafter as "Islander II"). Plaintiffs do not dispute that the pipeline is a facility under the NGA, and a basic reading of the statutes compels this premise.

Furthermore, the Federal Defendants argue that the claims brought under Counts II, III, and IV constitute a "civil action for the review of an order or action" of the Army Corps of Engineers, a Federal Agency. And, therefore, original jurisdiction lies in the Federal Circuit Courts of Appeal, pursuant to 15 U.S.C. § 717r(d)(1).[10]

10. In making their argument, the Federal Defendants also refer to issues discussed in their

In their response, the Plaintiffs address the Federal Defendant's argument under 15 U.S.C. § 717r(d)(1) by stating that, "[w]ith respect to the Federal Defendant's argument that the Court lacks jurisdiction to review licenses issued by the Federal Energy Regulatory Commission, the Amended Complaint makes no such challenge and this argument is irrelevant." [DE 75 at 4–5]. However, the amended complaint does not challenge the licenses issued by the Federal Energy Regulatory Commission ("FERC"). The amended complaint challenges the Army Corps's decisions to issue four NWPs. Furthermore, the statute makes an exception for challenges to orders or actions of FERC: "The United States Court of Appeals . . . shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission)." 15 U.S.C. § 717r(d)(*l* ). Therefore, because the amended complaint does not challenge FERC's actions or orders, and because the Federal Defendants rely on 15 U.S.C. § 717r(d)(1) in relation to Plaintiffs' challenge of the Army Corps's actions, Plaintiffs' argument regarding challenges to FERC is irrelevant.

Plaintiffs go on to state that, "[s]imply because the Federal Defendants merely allege the Federal action challenged is outside the scope of the Court's jurisdiction, without any record evidence, doesn't make it so. The Plaintiffs have alleged that the Federal Defendant's actions are subject to NEPA review by this Court and any alleged exemption must be proven with evidence." [DE 75 at 5]. Plaintiffs further argue that because they have brought no claims under the Natural Gas Act, the Federal Defendants' arguments that 15 U.S.C. § 717r, *et seq.*, bars jurisdiction are

improper. [DE 75 at 6]. Specifically, they argue that "[i]t is true that the construction of the Gulfstream Natural Gas Pipeline is a part of [the Plaintiffs'] Amended Complaint, however, Plaintiffs only challenge the Corps' review of the construction for the pipeline and [the Corps'] threshold determination that the Pipeline could be constructed under a Nationwide Permit. This determination, circumvented proper permitting regulations under NEPA." [DE 75 at 8].

The Federal Defendants respond that it does not matter whether or not Plaintiffs brought claims under the NGA. "Plaintiffs' Complaint as it relates to the natural gas pipeline is a civil action for review of an order or action by a Federal agency (i.e. the Corps) to issue, condition, or deny a permit (i.e., Nationwide Permit 12) required under Federal Law. Consequently, the Court of Appeals has exclusive jurisdiction." [DE 80 at 4].

Since the NGA was amended in 2005 to include 15 U.S.C. § 717r(d)(1), very few federal courts have taken up this jurisdictional issue. In Islander I, the Second Circuit Court of Appeals accepted jurisdiction over the Plaintiff's civil action under 717r(d)(1), enacted "to provide an expedited direct cause of action in the federal appellate courts to challenge a state administrative agency's order, action, or failure to act with respect to a permit application required under federal law in order to proceed with a natural gas facility project subject to section 5 or 7 of the NGA." *Id.* at 83. The Islander I Court noted that their consideration of 19(d) of the NGA "is a matter of first impression for this circuit." Application of this statute is a matter of first impression for this circuit as well. More recently, in 2008, the United

---

proposed findings of fact and conclusions of law filed in opposition to the motion for preliminary injunction. Plaintiffs correctly argue

that such pleadings are outside the scope of consideration on a motion to dismiss.

States Court of Appeals for the District of Columbia Circuit, issued an order based on jurisdiction pursuant to 15 U.S.C. § 717r(d). *See Weaver's Cove Energy, LLC v. Rhode Island DEP*, 524 F.3d 1330 (C.A.D.C.2008).

Plaintiffs in *Weaver's Cove Energy* and the Plaintiffs in Islander I and Islander II challenged a state agency's action and inaction. In this case, Plaintiffs challenge the Army Corps' actions. However, 15 U.S.C. § 717r(d) provides appellate jurisdiction for both types of challenges. It is therefore necessary to decide whether, despite that the fact that the amended complaint is pled under CAA, NEPA, ESA, and CAA/RHA, the claims actually fall under the ambit of 15 U.S.C. § 717r(d) because Plaintiffs do, in fact, seek "the review of an order or action of a Federal agency ... to issue ... any permit ... required under Federal law." I conclude that the claims do fall within the ambit of 15 U.S.C. § 717r(d)(*l*), thereby placing jurisdiction with the Courts of Appeals.

What is perhaps the most telling with regard to this jurisdiction issue is what 15 U.S.C. § 717r(d)(1) does not say. Section (d)(1) does not have the qualifying language common in federal statutes, such as "for claims brought pursuant to" this Act, or "for claims arising under" this Act or some of its provisions. Put shortly, there is no language that limits this provision to only those claims specifically brought under the Natural Gas Act. Instead, the statute states that the Court of Appeals shall have jurisdiction "over **any** civil action for the review of an ... action ... of a Federal agency ..." related to a "facility subject to ... section 717f of this title." 15 U.S.C. § 717r(d)(1)(emphasis added).[11] Plaintiffs do not dispute that the Pipeline and the WCEC segments are subject to section 717f. Therefore, Plaintiffs' claims that seek this Court's review of the Corps' decision to issue the permits fall squarely under the plain meaning of this Section (d)(1). While it is true that Plaintiffs claims were pled under CAA, NEPA, the ESA, the CWA, and the RHA, that is merely the form of the claims. The substance of the claims is the quest for judicial review of the Corps' issuance of permits for a natural gas pipeline, and the substance of these claims compels appel-

---

**11.** In a dissenting opinion, Judge Kearse, correctly states that "EPACT provides little guidance as to the contours of what it refers to as a 'civil action for the review of an order,' 15 U.S.C. § 717r(d)(1)...." *Islander East Pipeline Co. v. Connecticut DEP*, 482 F.3d 79, 107 (2d Cir.2006). However, this provision does stand in contrast to another special jurisdictional provision in the NGA that did specify the type of actions over which a Court of Appeals has jurisdiction. 15 U.S.C. § 3416(c) provides that the United States Court of Appeals for the Federal Circuit shall have exclusive original jurisdiction over cases that arise under various provisions of the NGA:

Except with respect to enforcement of orders or subpoenas under section 3364(a) of this title, the United States Court of Appeals for the Federal Circuit shall have exclusive original jurisdiction to review all civil cases and controversies **under section 3361, 3362 or 3363 of this title,** including any order

issued, or other action taken, under such section. The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies **arising under section 3364(a)(2) of this title;** such appeals shall be taken by the filing of a notice of appeal with the United States Court of Appeals for the Federal Circuit within thirty days after the entry of judgment by the district court. Prior to a final judgment, no court shall have jurisdiction to grant any injunctive relief to stay or defer the implementation of any order issued, or action taken, under section 3361, 3362, or 3363 of this title. *15 U.S.C. § 3416(c).*

Congress could have given 15 U.S.C. § 717r(d)(1) the same type of language limiting the original and exclusive jurisdiction of the Court of Appeals, but did not.

late jurisdiction under the NGA. Importantly, this Section (d)(1) does not prevent the Court of Appeals from considering Plaintiffs' claims within the context in which they were brought, namely, under CAA, NEPA, the ESA, the CWA, and the RHA.

Although the Federal Defendants do not argue it in their motion, the CAA claim must be dismissed along with the other claims for lack of jurisdiction. In Plaintiffs' response in opposition, they state, "Plaintiffs only challenge the Corps' review of the construction for the Pipeline and its threshold determination that the Pipeline could be constructed under a Nationwide Permit. [DE 75 at 8]. As Plaintiffs challenge the Corps' approval of the construction of the gas pipeline, all claims brought against the Corps must be dismissed for lack of jurisdiction, regardless of how they are plead. Even if this Court reached the CAA claim, it would still fail to state a claim for lack of compliance with the notice requirements as discussed above.

## VI. Gulfstream's Motion to Dismiss [DE 71]

Gulfstream moves to dismiss all eight counts against it. Although, from reading the Complaint, there is no indication that Counts I–V are alleged against Gulfstream, as the Counts' titles exclude Gulfstream from the list of defendants against the Counts are alleged. In fact, only Counts VI–VIII are alleged against Gulfstream. Therefore, Gulfstream's motion will be considered insofar as it relates to the counts alleged against it, Counts VI–VIII.

Gulfstream explains that its natural gas pipeline project is an extension of its existing interstate natural gas pipeline system, and that it will provide natural gas to FPL's WCEC when it is built. Gulfstream says that "[a]s evidenced by the Certificate of Public Convenience and Necessity issued to Gulfstream for its pipeline, the pipeline is subject to the jurisdiction of the Federal Energy Regulatory Commission (FERC) under § 717f(c)(1)(A) of the Natural Gas Act." [DE 71, ¶ 1].

Gulfstream argues that all eight counts should be dismissed for lack of jurisdiction under 15 U.S.C. § 717r(d)(1), to the extent that all eight counts "seek to challenge any federal action or order governing Gulfstream's FERC-licensed pipeline." [DE 71, ¶ 2]. By Plaintiffs' account, Gulfstream is "a foreign limited liability company ... currently doing business in this district ... [and] participated in various acts as alleged in this Amended Complaint...." [DE 13, ¶ 35]. In the amended complaint, the only actions taken by Gulfstream in alleged violation of state and Federal laws is their construction of the natural gas pipeline that begins at an existing Gulfstream station in Martin County. [DE 13, ¶ 60]. Plaintiffs allege that Gulfstream acquired the easement for the Pipeline from the South Florida Water Management District. In sum, Gulfstream's alleged activity consists entirely of constructing the Pipeline. Plaintiffs claim that such construction violates a number of state and Federal environmental laws and other civil laws. With regard to Gulfstream, then, Plaintiffs claims against Gulfstream challenge the federal and state actions governing Gulfstream's licensed pipeline. As such, these challenges alleged in Counts I–V against Gulfstream come under the purview of 15 U.S.C. § 717r(d)(l), and this Court lacks jurisdiction over them, despite the fact that Plaintiffs did not bring the claims under the Natural Gas Act.

The remaining state law claims, the Florida RICO, the Florida Water Resources Act, and Florida Government in the Sunshine claims, will be discussed below.

## VII. Palm Beach County's Motion to Dismiss [DE 69]

At the outset of its motion to dismiss, Palm Beach County ("PBC") adopts the motions to dismiss filed by FPL, the U.S. Army Corps of Engineers and Lt. Gen. Antwerp, and the DEP and Secretary Sole as they relate to PBC. I note that Plaintiffs fail to state a claim against PBC under Counts I–IV because Counts I–IV are actually challenges to the pipeline permitting. They do not allege that PBC took any specific action in violation of the statutes. Furthermore, Plaintiffs do not seek relief involving PBC in the requests for relief in those counts. Finally, Count I against PBC fails for Plaintiffs' failure to comply with the CAA notice provision as described above, and Count II cannot be alleged against PBC because it is not a federal agency, as discussed above. For all of those reasons, Plaintiffs have not stated a claim against PBC in Counts I–IV.

PBC addresses Counts VII and VIII of the amended complaint, which allege violations of the Federal RICO Act, 18 U.S.C. § 1961, and the State RICO Act, § 895.01, Fla. Stat. (1979), by Palm Beach County. The amended complaint alleges that the Palm Beach County Commissioners gave a pass to the former-Commissioners' illegal activities in violation of the Federal and State RICO Acts. [DE 69, ¶ 3]. *See also* [DE 13, ¶¶ 192, 195–196, 202–203, 205]. PBC states that assuming the amended complaint's allegations against former-Commissioners Masilotti and Newell are true, their acts cannot be imputed to the remaining members of the Palm Beach County Board of County Commissioners.[12]

Specifically, the amended complaint alleges that the "State and Private Defendants conspired with each other and with others including, but not limited to former County Commissioners Tony Masilotti and Warren Newell, the Palm Beach Board of County Commissioners, Gulfstream, Palm Beach Aggregates and others, in a pattern of racketeering activity in connection with the proposed WCEC Project segment ... for their own personal financial gain, and/or the gain of the bodies and agencies they represent, and/or their own political and professional gain, which resulted in their own personal financial gain ...." [DE 13, ¶ 202]. Further, "[e]ven after the State and Private Defendants, including but not limited to the Palm Beach County Commission, recognized that the decisions involving the proposed WCEC Project segment were made illegally by [Warren and Newell] ... the other County Commissioners ... condoned, ratified, and approved of these criminal activities, by failing to review these decisions and by failing to reconsider such decisions which were illegally made in violation of the RICO laws." [DE 13, ¶ 203].

However, setting aside PBC's argument against imputing Newell and Masilotti's actions to the other Commission members, there are other grounds for dismissal of all claims against PBC, and they will be discussed below.

## VIII. The RICO Claims

### A. Failure to File a RICO Case Statement

██ Plaintiffs have not filed a civil RICO case statement. S.D.Fla. L.R. 12.1

---

12. In support of their argument, PBC cites *Matthews v. Columbia County,* 294 F.3d 1294 (11th Cir.2002). In *Matthews,* the Eleventh Circuit determined that a county can not be held liable under § 1983, when some, but less than a majority, of the county's commission-ers vote to eliminate a public employee's job for an unconstitutional reason. This action does not allege § 1983 violations, therefore, I don't find this case particularly helpful to my analysis.

requires that plaintiffs who plead a claim under civil RICO, under both the state and federal statutes, to file a case statement. Rule 12.1's requirements are lengthy and detailed, requiring the plaintiffs to set forth the elements of their RICO claim. Rule 12.1 is too long to be recounted in this order. I invite the parties to review the Rule's requirements. Such an exercise, in itself, will shed light on Plaintiffs' inability to state a claim for Florida or Federal RICO.

It is appropriate to dismiss both RICO claims because Plaintiffs failed to file a RICO Case Statement. However, even without that fatal flaw, dismissal of the RICO claims is appropriate for failure to state a claim as explained below.

### B. The Federal RICO Count Fails to State a Claim

In Count VII, Plaintiffs allege that "The Defendants" committed civil RICO violations. However, they do not state which Defendants committed such violations, with the exception of the Palm Beach County Commission. Plaintiffs do not even specify which section of the federal RICO statute under which the bring their claim: Plaintiffs must opt to plead under one or more sections under 18 U.S.C. § 1962. They do not invoke jurisdiction under 18 U.S.C. § 1964, but the title of the count references 18 U.S.C. § 1961. This section of the statutes gives definitions. Turning to that section of the statute, 18 U.S.C. § 1961(1) defines "racketeering activity," which are the predicate acts that must be alleged. Finally, Plaintiffs fail to plead which defendants violated sections of 1962 [13] or how the violations were accomplished.

■■■■■■ "The four elements of civil RICO liability are (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir.2000). "Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10–year period." *Id.* at 1311–12 (citing 18

---

13.

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall hot be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962

U.S.C. § 1961(5)). "The phrase 'racketeering activity' is defined as any act which is indictable under a lengthy list of criminal offenses," including any act or threat involving murder, kidnaping, gambling, arson, robbery, extortion, bribery, mail fraud, wire fraud, counterfeiting, etc. *Id.* at 1312; *see also* 18 U.S.C. § 1961(1). *See also Rogers v. Nacchio,* 241 Fed.Appx. 602, 607 (11th Cir.2007). "In order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 949 (11th Cir.1997); *Rogers v. Nacchio,* 241 Fed.Appx. at 607.

 Plaintiffs claim that the following predicate acts occurred: (1) misuse of public office by Newell and Masilotti; (2) bribery; (3) extortion under color of official right (i.e., the use by governmental officials of their official powers in order to gain personal or illegitimate rewards, including campaign contributions and personal gain by Newell and Masilotti); (4) obstruction of justice by Newell and Masilotti; and (5) mail and wire fraud. [DE 13, ¶ 197]. However, Plaintiffs do not describe, for example, who bribed who. They do not describe any instance of mail or wire fraud, or even who committed the mail and wire fraud, and therefore, wholly fail to state the claim with particularity as required by Fed.R.Civ.P. 9(b), and S.D.Fla. L.R. 12.1.5(c). It appears that Plaintiffs have selected a few predicate acts, and incorporated them into the amended complaint, making "formulaic recitation," without putting forth any statements of fact in support thereof that is required under *Twombly.*

 Further, Plaintiffs have not alleged an enterprise. Plaintiffs state "[t]he provisions of energy in the form through the construction and maintenance of the proposed WCEC Project segment constitutes an enterprise as defined in the Federal RICO Act." [DE 13, ¶ 193, 201]. Setting aside the confusing syntax, naming "the provision of energy" as an enterprise falls short of what the RICO statutes require, not to mention what S.D.Fla. L.R. 12.1.6 requires.[14] "The term 'enterprise' is defined as including 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" § 1961(4). "There is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact. On its face, the definition appears to include both legitimate and illegitimate enterprises within its scope; it no more excludes criminal enterprises than it does legitimate ones." *See U.S. v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Further, "The 'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved...." *Id.,* 452 U.S. at 583, 101 S.Ct. at 2529. A "provision of energy," does not fit that definition, and merely alleging that the "Defendants conspired with each other and with others ...." does not allege an enterprise either. [DE 13, ¶¶ 194 and 202].

 An essential element of any RICO claim is a "pattern of racketeering

**14.** I note, for purposes of this section, the RICO claim is not evaluated according to what the Local Rule requires in the Case Statement. Instead, Plaintiffs claims are evaluated against the requirements of the RICO statutes themselves, and the Federal Rules of Civil Procedure.

activity." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004). In 1989, the Supreme Court fleshed out the pattern requirement, holding that the racketeering predicates must "amount to, or ... otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989). Plaintiffs do not plead that the alleged predicate acts pose a threat of continued criminal activity, in fact, Plaintiffs note multiple times in the amended complaint that the two criminal actors in the alleged scheme are currently in prison. [DE 13, ¶¶ 43, 192, 195, 196, 203, 204]. Therefore, Plaintiffs have failed to state a claim for Federal RICO.

### C. Florida RICO [15]

In Count VIII, Plaintiffs allege violations of Florida RICO laws against the same defendants as in the Federal RICO count. The "analysis of the Federal RICO claims is equally applicable to the Florida RICO claims." *See Ferrell v. Durbin*, 311 Fed.Appx. 253, 256, FN. 5 (11th Cir.2009), *citing Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263–64 (11th Cir.2004). In Jackson, the Court said

> We have explained that interpretation of Florida's RICO law "is informed by case law interpreting the federal RICO statute ... on which Chapter 772 is patterned." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir.1994) (internal citation

omitted). Because "Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,]" *Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F.Supp.2d 1276, 1284 (M.D.Fla.1999), the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims. *See All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir.1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claim cases.").
>
> *Id.*, at 1262–3.

Plaintiffs have plead the same facts and circumstances in both counts. Accordingly, it is unnecessary to evaluate the Florida RICO count separately. Both RICO claims then fail against all defendants against which they are alleged.

### IX. Palm Beach County Aggregates, Inc.'s Motion to Dismiss [DE 84]

Counts VI–VIII are alleged against the Aggregates. At the outset, the Aggregates adopts and incorporates FPL and Gulfstream motions to dismiss, alleging that this Court does not have jurisdiction over the claims pursuant to 15 U.S.C. § 717r(d)(1). Like other defendants, the Aggregates also claim that the amended complaint should be dismissed pursuant to Fed.R.Civ.P. 4(m), for Plaintiffs' failure to serve the Aggregates within 120 days after filing the complaint. And, the Aggregates adopts FPL's argument that the Plaintiffs lack standing for failure to allege actual or imminent injury in fact.

### X. Counts V and VI, the Pendant State Law Claims

Count V alleges violations of Section 373.013, *et seq.*, Florida Statutes, the Flor-

---

**15.** This statute was amended since the commencement of this action by 2009 Fla. Sess. Law Serv. Ch. 2009–115 (C.S.H.B.599).

ida Water Resources Act ("FWRA"). Plaintiffs allege that "when the Florida DEP granted approval for the WCEC Project segment, it failed to consider the impact of the WCEC Project segment upon such critical issues as global warming" and others. [DE 13, ¶ 161]. Count V also states that the DEP's approval of the permit is a "catalyst for urban sprawl and will literally fuel the growth of large developments into the western areas of Palm Beach County." [DE 13, ¶ 172]. Plaintiffs seek reversal of the DEP's approval of the WCEC Project and other segments, or in the alternative, an order directing the DEP Siting Board to reconsider its approval based on changes of circumstances which include: recent weather patterns; population density; water usage; and environmental impacts from mining operations. [DE 13, ¶ 173]. Count V also alleges that DEP's failure to regulate greenhouse gasses constitutes a violation of the federal Clean Air Act, the Florida Power Plant Siting Act and the Florida Water Resources Act. [DE 13, ¶ 177].

Count VI alleges violations of Section 286.011, Florida Statutes, Government in the Sunshine Law. The purpose of the Sunshine Law is to "prevent at non public meetings the crystallization of secret decisions to a point just short of ceremonial acceptance." *Zorc v. City of Vero Beach,* 722 So.2d 891, 896 (Fla. 4th DCA 1998). rev. denied, 735 So.2d 1284 (Fla.1999). As such, Florida law requires that any governmental meeting, in which official acts are to be taken, must be open to the public, and no "resolution, rule or formal action shall be considered binding except is taken or made at such meeting." § 286.011(1), Fla. Stat. (2009). Plaintiffs allege that meetings where "[m]any decisions regarding the proposed WCEC Project segment were made ... [occurred] behind closed doors in secret." [DE 13, ¶¶ 1189(c), 184]. Further, proper minutes were not taken if the meetings were public. [DE 13, ¶ 185]. Due to these alleged violations, Plaintiffs request that the Court "[d]eclare the actions of all Defendants and of all governmental agencies and bodies named herein ... to be in violation of the Florida Sunshine Law ... [and to] [d]eclare invalid and of no legal force and effect all permits and approvals for the proposed WCEC Project segment ... [and to] [p]ermanently enjoin all Defendants and any other entities from taking any action in furtherance of the construction...." [DE 13, ¶ 192].

Plaintiffs allege that this Court has jurisdiction over those claims under 28 U.S.C. § 1367. [DE 13, ¶ 13]. As explained above, this Court lacks jurisdiction over the federal claims due to 15 U.S.C. § 717r(d)(1). Additionally, Plaintiffs have failed to state a claim under Counts I, II, III, and IV against the DEP, Secretary Sole, Governor Charlie Crist, and the State of Florida due to sovereign immunity, failure of service of process, and other reasons as described above. Finally, as to the remaining federal claim, Count VII, Federal RICO, Plaintiffs have failed to state a claim against any defendant. Accordingly, it is necessary to dismiss all of the federal claims against all of the defendants of those claims.

What remains, then, are the state law claims, Counts V[16] and VI.[17] Plaintiffs claim that this Court has "pendant jurisdiction" of the state law claims. [DE 13,

---

**16.** I note that even if this Court were to consider the Power Line Siting Act as a claim brought in the amended complaint, it is a state law claim, and one over which I would decline to exercise jurisdiction.

**17.** Count VIII, Florida RICO, does not remain as a viable claim at this point in the analysis because it fails to state a claim, as described above. Even if Florida RICO survived, I would decline to exercise jurisdiction over it.

¶ 13]. 28 U.S.C. § 1367(a) states that "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Various defendants argue that the Court should not exercise supplemental jurisdiction over the pendant state law claims under 28 U.S.C. § 1367 because they are not "so related" to the federal claims as to support supplemental jurisdiction.

▮ It is unnecessary to reach such an argument. Presuming that the state law claims are related under § 1367(a), this Court will not retain jurisdiction over them because the federal claims are dismissed. "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Holt v. Crist,* 233 Fed.Appx. 900, 904 (11 th Cir.2007), *citing Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088–89 (11th Cir. 2004). "We have encouraged district courts to dismiss any remaining state claims when ... the federal claims have been dismissed prior to trial." *Id., citing Raney,* 370 F.3d at 1089. I decline to exercise supplemental jurisdiction over the remaining state law claims, Counts III and IV, and therefore they will be dismissed.

## XI. Other Grounds for Dismissal

Various defendants have argued for dismissal of various claims due to the abstention doctrine, Plaintiffs' lack of standing, and Plaintiffs' failure to exhaust administrative remedies, to name a few. As dismissal of all of the claims is appropriate for a variety of other reasons, it is not necessary for this Court to reach those arguments.

## XII. FPL's Motion to Dismiss [DE 48]

FPL, the intervenor-defendant, also filed a motion to dismiss. Various defendants incorporated by reference arguments from FPL's motion into their own. In doing so, the Court read and considered those arguments raised in FPL's motion. The Court has determined that all claims against the named-defendants must be dismissed for the all of the reasons stated above. As there are no longer claims against the named-defendants, FPL no longer has an interest to protect in the litigation. As such, while FPL's arguments advanced its purpose, it is nonetheless appropriate to deny FPL's motion to dismiss as moot.

## XIII. Motion to Amend the Amended Complaint

Plaintiffs filed a motion to amend the amended complaint [DE 90], on June 26, 2009, and an amended motion to amend the amended complaint [DE 91] on July 7, 2009. Plaintiffs' original complaint was filed on May 23, 2008, and the amended complaint on August 25, 2008. As grounds for leave to amend, Plaintiffs explain that (1) they "have uncovered newly discovered evidence relating to criminal activities of County Commissioner Warren Newell which recently came to light;" and (2) FP & L has announced scheduled rate hikes that "demonstrate an additional and significant adverse impact of the WCEC, which the Defendants have previously failed to disclose to the public." [DE 91, ¶¶ 1, 6].

### A. There was Undue Delay and the Motion is Untimely

▮ With regard to the first arguments, Plaintiffs state that the "newly discovered evidence relating to criminal activities of Warren Newell" has "recently come to light as the result of his sentenc-

ing and his admissions of guilt." [DE 91, ¶¶ 1–2]. Former Commissioner Warren Newell pleaded guilty on September 11, 2007.[18] He was sentenced to five year in prison on January 11, 2008.[19] The sentencing and admission of guilt happened well over a year ago, and many months before the amended complaint was filed. Under Rule 15, Federal Rules of Civil Procedure, ". . . a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Had such events occurred subsequent to filing the original complaint, there may be merit in Plaintiffs' wish to amend their amended complaint almost a year after it was filed. But, in this case, the admission of guilt and the sentencing of Warren Newell happened long before the filing of both the original complaint and the first amended complaint. And, each of the defendants' motions to dismiss are ripe for adjudication. Requesting leave to amend now constitutes undue delay, and the motion for leave to amend is untimely.

## B. The Motion is Futile

Plaintiffs' motion for leave to amend should also be denied because the amendments are futile. Alleging additional illegal activities by the former Commissioners in the proposed second amended complaint does not rescue the RICO claims or any others. Plaintiffs are still unable to state a Federal RICO claim—not only because there remains no RICO case statement— but also Plaintiffs' Count VII does not state a claim under the Federal RICO statutes. Merely stating that the admitted criminal acts of the non-party former Commissioners "provide[s] irrefutable and overwhelming evidence of violations of the Federal RICO law," does not make it so. [DE 88, ¶ 194]. Additionally, it is unnecessary to evaluate whether the additions to Count VI, violations of Florida's Government in the Sunshine laws, affect that claim, or Court V, as this Court declines to exercise supplemental jurisdiction over the remaining state court claims.

With regard to their second argument about potential rate hikes, in Plaintiff's first amended complaint, they already allege that as a consequence of the alleged actions of the former Commissioners and others, Plaintiffs have suffered "financial harm . . . [as they are] now required to pay staggering amounts of money in the form of . . . higher energy bills from FP & L. . . ." [DE 13, ¶ 196]. As one can see from the amended complaint, the harm of having to pay higher energy bills is already alleged. Furthermore, the first amended complaint does not allege that any of the Plaintiffs are energy bill-payers who would be affected by the scheduled rate increase. Similarly, the proposed second amended complaint also does not allege that either the Palm Beach County Environmental Coalition (PBCEC), nor any of the named Plaintiffs, Peter "Panagioti" Tsolkas, Peter Schultz, Sharon Waite, and Alexandria Larson, pay energy bills issued by FPL or its affiliates, or that they would be affected by the scheduled rate increase. Therefore, in both iterations of the complaint, it is not alleged, and it is not clear, that the Plaintiffs have standing to bring a claim of being harmed financially through a scheduled rate increase by FPL, but without a doubt, both iterations of the complaint allege it. Therefore, the new facts and circumstances about FPL's rate increases does not change the nature of the eight counts, or change the fact that it is appropriate to

---

**18.** *See* www.wpbf.com/politics/14092943/ detail.html.

**19.** *See* http://www.sun-sentinel.com/sfl-111 newellsentence,0,392037.story

dismiss all of the counts, most of which fail to state a claim for a variety of different reasons.

 Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed. *Osahar v. U.S. Postal Service,* 297 Fed.Appx, 863, 864 (11th Cir.2008), *citing Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir. 2007). In this case, the proposed amendments are futile, and even if they were adopted, the purported second amended complaint would still be properly dismissed. As such, Plaintiffs are not prejudiced for lack of opportunity to amend, and it is appropriate to deny the motion.

### XIV. Intervenor–Defendant's Motion for Hearing

FPL filed a motion for a hearing on their motion to dismiss [DE 49]. I have determined that the matters raised in its motion and the others were fully briefed and that oral argument is not necessary, therefore, the motion is denied.

### XV. Concluding Summary

Count I, violations of the CAA, Count II, violations of NEPA, Count III, violations of ESA, and Count IV, violations of the CAA and RHA, were alleged against the Army Corps and the State Defendants and Palm Beach County. These claims must be dismissed for lack of jurisdiction under 15 U.S.C. § 717r(d) as alleged against the Army Corps, and other reasons stated above. They must be dismissed for Eleventh Amendment Immunity, and other grounds stated above, as to the State Defendants. They must be dismissed for failure to state a claim as to Palm Beach County, as described above.

Count VII, Violations of Federal RICO statutes was alleged against the State Defendants, the Aggregates, Palm Beach County, and Gulfstream. This claim must

be dismissed against all of those defendants for failure to file a RICO case statement, and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P., as explained in more detail above.

As the federal claims are dismissed, I decline to retain jurisdiction over the remaining state claims. They are: (1) Count V, violations of the Florida Water Resources Act, alleged against the State Defendants and Palm Beach County; (2) violations Count VI, Government in the Sunshine Law, alleged against the State Defendants, the Palm Beach County, the Aggregates and Gulfstream; and (3) Count VIII, violations of Florida RICO, alleged against the State Defendants, Palm Beach County, the Aggregates, and Gulfstream. Count VIII, Florida RICO, must also be dismissed for failure to state a claim or file a RICO case statement.

Accordingly, it is hereby

ORDERED AND ADJUDGED:

1. Defendants Florida Department of Environmental Protection and Secretary Michael W. Sole's motion to dismiss [DE 60] is GRANTED. All claims alleged against Defendants Florida Department of Environmental Protection and Secretary Michael W. Sole, Count I, Count II, Count III, and Count IV, are DISMISSED WITH PREJUDICE.

2. Defendant Palm Beach County's motion to dismiss [DE 69] is GRANTED. Counts I–IV are DISMISSED WITH PREJUDICE against Palm Beach County. Counts V–VIII are DISMISSED WITHOUT PREJUDICE against Palm Beach County.

3. Defendants State of Florida and Governor Charles J. Crist Jr.'s motion to dismiss [DE 70] is GRANT-

ED. Counts I–IV are DISMISSED WITH PREJUDICE against the State of Florida and Governor Charles J. Crist Jr. Counts V–VIII are DISMISSED WITHOUT PREJUDICE against the State of Florida and Governor Charles J. Crist Jr.

4. Defendant Gulfstream Natural Gas System, L.L.C.'s motion to dismiss [DE 71] is GRANTED. Counts VI–VIII alleged against Gulfstream Natural Gas System, L.L.C. are DISMISSED WITHOUT PREJUDICE.

5. Defendants United States Army Corps of Engineers and General Robert L. Van Atwerp's motion to dismiss [DE 73] is GRANTED. Counts I–IV alleged against the United States Army Corps of Engineers and General Robert L. Van Atwerp are DISMISSED WITH PREJUDICE.

6. Defendant Palm Beach Aggregates, Inc.'s motion to dismiss [DE 84] is GRANTED. Counts VI–VIII alleged against Palm Beach Aggregates, Inc. are DISMISSED WITHOUT PREJUDICE.

7. Intervenor–Defendant Florida Power and Light Company's motion for a hearing [DE 49] is DENIED.

8. Plaintiff Palm Beach County Environmental Coalition's motion to amend and correct the amended complaint [DE 87] is DENIED AS MOOT as they subsequently filed an amended motion to amend.

9. Plaintiff Palm Beach County Environmental Coalition's amended motion to amend and correct the complaint [DE 91] is DENIED.

10. Defendants United States Army Corps of Engineers and General Robert L. Van Antwerp's first motion to dismiss [DE 21] is DENIED AS MOOT as they subsequently filed an second motion to dismiss.

11. Intervenor–Defendant Florida Power and Light Company's motion to strike [DE 24/25] is DENIED AS MOOT.

12. Intervenor–Defendant Florida Power and Light Company's motion to dismiss [DE 48] is DENIED AS MOOT.

13. Defendant State of Florida and Governor Charles J. Crist Jr.'s motion to dismiss [DE 62] is DENIED AS MOOT as they subsequently filed an amended motion to dismiss.

14. Defendant Florida Power & Light Company's motion to strike Plaintiffs' motion to amend complaint and incorporated memorandum of law [DE 89] is DENIED AS MOOT.

15. Defendant Palm Beach Aggregates, Inc.'s motion to adopt and join FPL's motion to strike [DE 90] is DENIED AS MOOT.

16. Defendant Florida Power & Light Company's motion to strike Plaintiffs' amended motion to amend the complaint [DE 96] is DENIED AS MOOT.

17. Defendant Palm Beach Aggregates, Inc.,'s motion to adopt and join FPL's motion to strike Plaintiffs' amended motion to amend the complaint [DE 97] is DENIED AS MOOT.

It is further ordered that as no pending claims remain against any Defendant, the

**1356**

Clerk shall CLOSE this case. All other pending motions are DENIED AS MOOT.